698 So.2d 299 (1997)
STATE of Florida, DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, Appellant,
v.
Harold LINDQUIST, Appellee.
STATE of Florida, DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, Appellant,
v.
Eric LINDQUIST, Appellee.
Nos. 97-01091, 97-01071.
District Court of Appeal of Florida, Second District.
July 23, 1997.
Rehearing Denied August 27, 1997.
*300 Edward A. Dion, General Counsel, and Laura E. Taylor, Senior Attorney, Tallahassee, for Appellant.
Donald P. Day of Berry & Day, P.A., Naples, for Appellees.
PER CURIAM.
The appellant, State of Florida, Department of Labor and Employment Security (the Department), challenges nonfinal orders denying its motions for change of venue to Leon County, the location of its headquarters.[1] We affirm in both cases because the trial court did not abuse its discretion in ruling that venue was proper in Lee County, the place where the Department allegedly violated appellees' constitutional rights.
In 1994, the electorate of the State of Florida voted to amend the Florida Constitution to provide limits on marine net fishing. The reason for this amendment was "to protect saltwater finfish, shellfish, and other marine animals from unnecessary killing, overfishing, and waste." Art. X, § 16(a), Fla. Const. The amendment prohibits the use of gill nets and entangling nets in the Florida waters, and disallows the use of nets containing more than 500 square feet of mesh area in nearshore and inshore Florida waters. See Art. X, § 16(b)(1)-(2), Fla. Const. In response to the adoption of section 16, article X, of the Florida Constitution, the Legislature enacted a "net ban assistance program" to provide economic assistance to commercial saltwater products licensees suffering losses as a result of the amendment limiting marine net fishing. § 370.0805, Fla. Stat. (1995).
One such assistance program established under section 370.0805 is the "net buy-back program" (the Program) which provides economic assistance to compensate commercial saltwater products licensees for "nets rendered illegal or useless by the constitutional limitation of marine net fishing." § 370.0805(5). Generally, economic assistance under the Program is calculated based on the length of the net and the amount of mesh. See § 307.0805(5)(a). The Program provides that "[s]uch assistance shall be in nonnegotiable amounts not intended to reflect the actual value of the nets," and that "[a]ny net for which a licensee receives payment shall become the property of the department and shall be destroyed or disposed of in a manner that is not harmful to Florida's environment." § 307.0805(5)(e).
Appellees sent "net buy-back applications" to the Department. The applications represented that each appellee intended to sell sixteen nets to the Department. Thereafter, on August 2, 1995, the Department sent a letter to each appellee scheduling a "net buyback appointment" to occur in August 1995, at the parking lot of the Fishers of Men Lutheran Church, in Pine Island, Florida. Pine Island is in Lee County. The letters *301 indicated that based on the information available to the Department, appellees were eligible to receive compensation for sixteen nets, and stated, "If you do not agree with this preliminary determination of your eligibility to sell back a certain number of nets, you may request a reconsideration in writing within 15 days of the date of this notice." The letters concluded by stating "Upon delivering the nets to the site location listed above, you will receive a voucher for the amount of money that will be sent to your home address."
Each appellee received two "net recovery vouchers." Each voucher was signed by the applicant and a representative of the Department. Appellee Harold Linquist's vouchers are as follows: The first is dated August 16, 1995, and lists a total value of $18,313.78 for 8,694 yards of net recovered by the Department; the second, dated August 28, 1995, lists a total value of $5,278.87 for 905 yards of net recovered by the Department. Appellee Eric Linquist's vouchers are as follows: the first is dated August 18, 1995, and lists a total value of $12,512.52 for 4,339 yards of net recovered by the Department; the second, dated September 6, 1995, lists a total value of $30,687.41 for 5,261 yards of net recovered by the Department.
Thereafter, the Department sent each appellee a letter which determined that they were not eligible for the full amount of assistance listed in their net recovery vouchers. According to the letters, Harold Linquist received a State of Florida warrant in the amount of $18,313.78 for the nets recovered, and Eric Linquist received a State of Florida warrant in the amount of $11,265.03 for the nets recovered. The letters further apprised each appellee of his right to file a written appeal within twenty-one days from the date of receipt of the letter.
In October 1995, appellees served the Department with their petitions for "formal proceedings." In response, the Department sent each appellee a letter stating that it was prohibited from taking any action on his petition because of an order in a separate class action case which enjoined the Department from distributing any money to applicants of the Program. On April 26, 1996, the injunction was dissolved as a result of a settlement in the class action. Subsequently, the First District decided that the injunction in the class action case did not justify the Department's refusal to take action on an administrative appeal. See Stiller v. Florida Dep't of Labor & Employment Sec., 677 So.2d 377 (Fla. 1st DCA 1996).
On November 15, 1996, appellees filed complaints against the Department seeking relief for breach of contract, conversion, and "COUNT III: TAKING WITHOUT JUST COMPENSATION AND DUE PROCESS." The complaints allege that the Department "established a procedure whereby the State of Florida would travel to a fisherman's home county and enter into a contractual relationship for the purchase of the nets." The third count of each complaint alleges that the Department "unilaterally refused to pay the contract amount and offered a payment in an amount substantially less than the agreed upon amount, and substantially less than fair market value." The complaints further allege that the Department "destroyed the property without notification to the [appellee], or an offer to compensate the [appellee] for the fair market value of the property taken and destroyed."
Thereafter, the Department filed motions in each case to transfer venue to Leon County, the site of its headquarters. On February 19, 1997, the trial court entered its orders denying the motions to transfer venue. In these interlocutory appeals, the Department argues that the trial court erred in rejecting its privilege to control the venue in a civil lawsuit brought against a state agency. For the reasons expressed in this opinion, we conclude that the trial court's decision to hear this case in Lee County was not an abuse of discretion. See Graham v. Edwards, 472 So.2d 803 (Fla. 3d DCA 1985) (holding that state has burden of demonstrating on appeal that trial court abused its discretion in refusing to transfer venue to location of its headquarters), review denied, 482 So.2d 348 (Fla.1986).
It is well recognized in Florida that venue in civil actions brought against the state or one of its agencies or subdivisions, absent waiver or exception, properly lies in the *302 county where the state, agency, or subdivision maintains its principal headquarters. See Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362 (Fla.1977). This venue privilege applies in cases in which the primary purpose of the litigation is to obtain a judicial interpretation of a party's rights under rules and regulations of the state agency, where no violations of constitutional rights are threatened in the county where the suit is instituted. See Smith v. Williams, 160 Fla. 580, 35 So.2d 844 (1948); Star Employment Serv. v. Florida Indus. Comm'n, 122 So.2d 174 (Fla.1960). The purpose of this privilege is to promote orderly and uniform handling of state litigation and to prevent conflicting judicial rulings in different jurisdictions. Carlile, 354 So.2d 362; Smith, 160 Fla. 580, 35 So.2d 844. Moreover, this policy results in a minimum expenditure of effort and public funds because the required records and the important witnesses are typically located in the county where the agency is headquartered. See Smith, 160 Fla. 580, 35 So.2d 844; Star Employment, 122 So.2d 174; Paxson v. Collins, 100 So.2d 672 (Fla. 3d DCA 1958).
An exception to this home venue privilege is the "sword wielder" doctrine. See Carlile, 354 So.2d at 365; See also Department of Revenue v. First Federal Savings & Loan Ass'n of Ft. Myers, 256 So.2d 524 (Fla. 2d DCA 1971). In First Federal Savings, this court held that a state agency may be sued in a county other than the site of its headquarters where "the official action complained of has been or is being performed in the county wherein the suit is filed, or where the threat of such action in said county is both real and imminent." First Federal Savings further elaborated on the gist of the sword wielder doctrine:
The question to be answered in these cases may be said to be whether the state is the initial sword-wielder in the matter and whether the plaintiff's action is in the nature of a shield against the state's thrust. If so, then the suit may be maintained in the county wherein the blow has been or is imminently about to be laid on. On the other hand if plaintiff is the prime mover in the premises against a passive or dormant state or state agency then venue lies properly in the county wherein the state or the agency maintains its official headquarters.
256 So.2d at 526. Thus, the sword-wielder doctrine requires that the agency's threat of action must be real and imminent rather than contingent and anticipatory to qualify as an exception to the general rule of venue. See id.; Dowdy v. Lawton, 72 So.2d 50, 51 (Fla.1954) (refusing to override venue privilege where "At most the threat was that in due course [the state agency] would take some kind of unspecified action at some time in the future."); Department of Revenue v. Crisp, 337 So.2d 404, 405 (Fla. 2d DCA 1976) (noting that "This court has been quite careful to distinguish between the types of agency action which are affirmative and those which are passive and dormant."), cert. denied, 346 So.2d 1248 (Fla.1977); Straughn v. G.J.M., Inc., 344 So.2d 318, 319 (Fla. 1st DCA 1977) (holding that "mere naked demand" by agency and no affirmative action to enforce demand not enough to establish sword wielder exception).
We pause at this juncture to examine whether the Department took affirmative action in Lee County sufficient to meet this element of the sword wielder doctrine in the instant cases. The complaints allege that the Department traveled to appellees' home county, entered into agreements with appellees in that county, and took physical possession of appellees' personal property in that county. We conclude that this conduct qualifies as official action occurring in Lee County to satisfy this component of the sword wielder doctrine. See Smith, 35 So.2d at 847 ("[A] state officer or state agency may perform official acts throughout the state and may be amenable to the jurisdiction of the courts where official acts, the subject of litigation in such courts, have been performed.").
Our analysis does not end here. The sword wielder exception to the state's privilege of venue is further limited to cases wherein the primary purpose is to obtain direct judicial protection from an alleged unlawful infringement of the plaintiff's constitutional rights within the county where the lawsuit is filed, because of the enforcement *303 or threatened enforcement by a state agency of a statute, rule, or regulation alleged to be unconstitutional as to the plaintiff, and where the validity of the statute, rule, or regulation sought to be enforced comes into question only secondarily and incidently to the main issue involved. See Carlile, 354 So.2d 362; Smith, 160 Fla. 580, 35 So.2d 844; Star Employment, 122 So.2d 174. Thus, appellee must allege a constitutional violation in order for venue to be proper outside the county of the state agency's headquarters. See Hancock v. Wilkinson, 407 So.2d 969 (Fla. 2d DCA 1981) (applying sword wielder doctrine where plaintiff alleged harassment by agency which amounted to violation of constitutional rights); Board of Medical Examiners v. Kadivar, 482 So.2d 501 (Fla. 4th DCA 1986) (overriding venue privilege where plaintiff alleged deprivation of right to practice medicine); Graham v. Vann, 394 So.2d 178 (Fla. 1st DCA 1981) (rejecting venue privilege where plaintiff prisoners claimed deprivation of basic constitutional rights due to intolerable prison conditions).
Our analysis in the cases at bar is limited to appellees' claim of deprivation of property without procedural due process. We take this approach because count III of appellees' complaints cites only article I, section 9, of the Florida Constitution. Moreover, appellees have not argued on appeal that their complaints claim a "taking" in the sense of an inverse condemnation under article X, section 6, of the Florida Constitution, and appellees have not clearly alleged that the Department's actions were unfair, arbitrary, or without a rational basis as required for a cause of action implicating a violation of substantive due process. See Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991) (explaining difference between procedural and substantive due process).
With this narrow focus in mind, we hold that appellees have sufficiently articulated claims for deprivation of procedural due process. Appellees have alleged the deprivation of an interest in personal property. Such an interest is protected by article I, section 9, of the Florida Constitution. See generally Department of Law Enforcement, 588 So.2d 957 (discussing due process protection as applying to both real and personal property). Furthermore, appellees have sufficiently alleged lack of notice and an opportunity to be heard. The cases cited by the Department in opposition are distinguishable. In Florida Department of Corrections v. McCarty, 610 So.2d 693 (Fla. 2d DCA 1992), the state agency rejected a bid by plaintiff to lease office space. Plaintiff sued DOC and alleged that it deprived him of his property interest in the contract without due process of law. This court held that plaintiff's own allegations established that he was afforded notice and a hearing, thereby defeating his deprivation of due process claim. See also State, Dep't of Labor & Employment Sec. v. Summit Consulting, Inc., 594 So.2d 862 (Fla. 2d DCA 1992) (holding that statute alleged to be unconstitutional for failure to provide due process did in fact provide notice and opportunity to be heard, thereby precluding application of sword wielder doctrine). Unlike McCarty and Summit Consulting, in the instant cases, although the Department provided opportunities for appeals at varying stages during the proceedings, appellees alleged failure to afford such procedural due process before destruction of the nets. See K.M.T. v. Department of Health and Rehabilitative Servs., 608 So.2d 865 (Fla. 1st DCA 1992) (concluding that absent necessity of quick action by the state, due process requires opportunity of hearing before deprivation of significant property interest).
We have considered the Department's argument that appellees have attempted to transform actions for breach of contract into lawsuits for violation of constitutional rights. In Florida Agency for Health Care Administration v. St. John Medical Plans, Inc., 674 So.2d 911 (Fla. 3d DCA 1996), the state agency terminated the plaintiff's contract before the end of its term. The plaintiff responded by filing a lawsuit raising, among other things, an inverse condemnation claim. The court held that a final installment in a contract could not be characterized as a property interest for purposes of claiming a constitutional taking. Hence, venue was proper in the location of the agency's headquarters. In Department of Corrections v. Ross, 680 So.2d 622 (Fla. 5th DCA 1996), the *304 plaintiff submitted a bid to the state agency for the lease of office space. The agency notified the plaintiff that it intended to award him the lease contract. However, afterward, the agency canceled the invitation to bid due to legislative budget cuts. The plaintiff sued the state agency for declaratory judgment and breach of contract. The appellate court followed St. John Medical Plans and concluded that this action did not amount to an unconstitutional taking of a property interest. Accordingly, the court held that the home venue privilege applied.
Although the events leading to appellees' causes of action occurred against the backdrop of mutual voluntary agreements to sell nets to the Department, appellees' constitutional claims are different from those brought in Ross and St. John Medical Plans. The property interest in the instant cases is not the enforcement of a contractual promise, but rather is an interest in personal property. Furthermore, section 307.0805(5)(e) states that "[a]ny net for which a licensee receives payment shall become the property of the department and shall be destroyed or disposed of in a manner that is not harmful to Florida's environment." (Emphasis added.) This provision suggests that destruction of appellees' property will occur after performance of the contract, and it implies that any net for which a licensee does not receive payment will remain the property of the licensee. The Department's conduct, if proved, appears to violate section 307.0805(5)(e). We hold that an allegation of this type of unconstitutional overreaching is sufficient to subject the state to litigation outside of its home county. See McCarty, 610 So.2d at 695 ("The sword-wielder doctrine has been applied in Florida when there is alleged harassment and overzealous enforcement of state rules and regulations.") (emphasis added).
We are mindful of the danger that unscrupulous plaintiffs may allege incorrect facts merely to defeat the state's venue privilege. In that regard, the Department suggests that it has not destroyed appellees' property, but that the nets would be available to appellees after resolution of appellees' petitions for formal proceedings. However, that argument is premature because this court is not empowered to examine the merits of appellees' cases. As stated by the supreme court in Smith:
Whether the plaintiffs are correct in their contention that their constitutional rights in Dade County are being or will be unlawfully invaded by the enforcement of rules promulgated by the commission is not before us for determination. Whatever the true facts may prove to be, the plaintiffs do have the right to have this question presented by their bill judicially determined in a suit instituted for that purpose in the jurisdiction where the alleged wrong is threatened and to seek and have relief from the operation of unconstitutional acts of the Commission which may be shown to have been committed in that jurisdiction.
35 So.2d at 847. Similarly, at this stage of the instant cases, appellees are not charged with proving the facts alleged in their complaints. It is sufficient that their complaints state valid causes of action. Moreover, the state has the burden of proving that venue should be transferred by presenting evidence to the trial court. See Westshore Glass Corp. v. Hack Indus., Inc., 522 So.2d 1046 (Fla. 2d DCA 1988) ("Assuming the complaint does not affirmatively show that venue is lacking, the burden of pleading and proving improper venue is upon the defendants.") (quoting Magee v. Liberty Mut. Ins. Co., 366 So.2d 827 (Fla. 4th DCA 1979)); Tropicana Prods., Inc. v. Shirley, 501 So.2d 1373, 1375 (Fla. 2d DCA 1987) ("[O]nce a defendant has challenged venue with an affidavit controverting a plaintiff's venue selection, the burden is upon the plaintiff to prove that the selection of venue is proper."); Lake Worth Premium Fin. Co. v. Singletary, 493 So.2d 1130, 1131 (Fla. 4th DCA 1986) ("Unless the defendant has sufficiently challenged the plaintiff's venue selection, the plaintiff need not allege or prove facts in support of his venue selection"); see also § 47.111, Fla. Stat. (1995) ("The adverse party [in context of motion for change of venue] has the right to deny the allegations of the motion. The court shall hear the evidence on the motion.") (emphasis added). The record on appeal as presented to this court by the Department contains no affidavits, *305 verified motions, or hearing transcripts. Based on the record before us, we are not persuaded that the trial court abused its discretion.
We conclude that appellees have sufficiently alleged an invasion of their constitutional due process rights by the Department in Lee County. Accordingly, we find that the trial court acted within its discretion in denying the Department's motions to transfer venue to Leon County.
Affirmed.
SCHOONOVER, A.C.J., and LAZZARA and QUINCE, JJ., concur.
NOTES
[1] Because of the similarity of facts and the identity of issues, this court sua sponte consolidates both cases for purposes of this appeal.