NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GLENN L. SPRADLEY,                          )
                                            )
            Petitioner,                     )
                                            )
v.                                          )          Case No.  2D14-4056
                                            )
PAROLE COMMISSION,                          )
                                            )
            Respondent.                     )
_____)

Opinion filed September 9, 2015.

Petition for Writ of Certiorari to the Circuit
Court for the Sixth Judicial Circuit for
Pinellas County; sitting in its appellate
capacity.

Glenn Spradley, pro se.

Sarah J. Rumph, General Counsel,
Commission on Offender Review,
Tallahassee, for Respondent.


LaROSE, Judge.

            Glenn Spradley petitions for certiorari review of the trial court's order

dismissing his mandamus petition seeking to compel the Parole Commission to

reconsider its denial of parole.  He wants us to quash the order and instruct the trial

court to transfer the petition to Hillsborough County for adjudication on the merits.  We

grant the petition, approve the trial court's decision that proper venue is in Leon County,

quash the dismissal of the petition, and remand for transfer to the circuit court in the Second Judicial Circuit in Leon County.

In 1980, a jury convicted Mr. Spradley of attempted first-degree murder; the trial court sentenced him to life in prison. Mr. Spradley was incarcerated in Union County, Florida, with a presumptive parole release date of November 7, 1998. In August 1998, a parole examiner interviewed Mr. Spradley and recommended his release on the presumptive date. See Fla. Admin. Code R. 23-21.015 (1998).[1] The Commission heard Mr. Spradley's case at an October 1998 meeting. The Commission considered whether there was a reasonable probability that Mr. Spradley, on parole, would "live and conduct himself . . . as a respectable and law-abiding person." See § 947.18, Fla. Stat. (1998). The Commission thought not. Consequently, it denied Mr. Spradley's release, suspended the presumptive release date, and referred the case for

---

[1]**23-21.015. Effective Parole Release Date Interview Procedure.** (1) . . . Within ninety (90) days before an inmate's presumptive parole release date, the Director of Parole Grant shall direct a Parole Examiner to interview the inmate for purposes of making a recommendation to the Commission on whether or not to authorize an effective parole release date and to establish a parole release plan.

extraordinary review, with future interviews to be scheduled.  See Fla. Admin. Code R.

23-21.0155[2]; § 947.174, Fla. Stat. (1998)[3]; Fla. Admin. Code R. 23-21.013(1).[4]

---

[2]**23-21.0155.  Extraordinary Interview and Review Procedures.**
Where an inmate's case is referred to the Commission for extraordinary review, the following procedures shall be utilized:
(1) The Commission shall independently review the complete official record in the inmate's case to determine whether he is eligible for parole release.

         . . . .

(3) If less than a majority of the commission finds the inmate to be eligible for parole release, the Commission shall enter a written order refusing to authorize the effective parole release date and scheduling an extraordinary interview within two (2) years from the date of the effective parole release date interview.  The Commission's order shall specifically state the reasons for finding the inmate to be ineligible for parole release and shall identify the information relied upon in reaching this conclusion.  Additionally, the order shall suspend the established presumptive parole release date until such time that the inmate is found to be eligible for parole release.  The determination, on extraordinary review, that an inmate is not eligible for parole release shall have the effect of overriding his guideline-determined presumptive parole release date[;] however, the inmate shall continue to receive extraordinary interviews on a biennial basis.

[3]**947.174.  Subsequent interviews**
(1)(a) For any inmate, except an inmate convicted of an offense enumerated in paragraph (b), whose presumptive parole release date falls more than 2 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date. Such interview shall take place within 2 years after the initial interview and every 2 years thereafter.
(b) For any inmate convicted of murder, attempted murder, sexual battery, or attempted sexual battery, or any inmate who has been sentenced to a 25-year minimum mandatory sentence previously provided in s. 775.082, and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date.  The interview shall take place once within 5

Mr. Spradley was scheduled for another parole release date interview in February 2013. Before the scheduled date, the Commission informed the chief judge of the Sixth Judicial Circuit (Pinellas County), where Mr. Spradley was sentenced, of this status. See § 947.1745(6), Fla. Stat. (2012); Fla. Admin. Code R. 23-21.015(1) (2012).[5] Responding to the Commission, the chief judge objected to Mr. Spradley's release. See § 947.1745(6); Fla. Admin. Code R. 23-21.015(1).[6] Thereafter, a parole examiner interviewed Mr. Spradley and recommended continued suspension of his release date. See Fla. Admin. Code R. 23-21.015.[7] At a June 2013 Commission meeting in Tampa

years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing.

[4]**23-21.013 Biennial Interview Procedure**
(1) The Director of Parole Grant shall schedule a biennial interview for every eligible inmate within two (2) years of the month of the inmate's initial interview. Subsequent interviews will be scheduled every twenty-two (22) months, unless otherwise specified by a panel of full Commission.

[5]The pertinent wording of both section 947.1745(6) and rule 23-21.015(1) (2012) is as follows:
Within 90 days before the effective parole release date interview, the commission shall send written notice to the sentencing judge of any inmate who has been scheduled for an effective parole release date interview. If the sentencing judge is no longer serving, the notice must be sent to the chief judge of the circuit in which the offender was sentenced. The chief judge can designate any circuit judge within the circuit to act in place of the sentencing judge.

[6]The pertinent wording of both section 947.1745(6) and rule 23-21.015(1) (2012) is as follows: "Within thirty (30) days after receipt of the Commission's notice, the sentencing judge[,] or the designee[,] shall send to the Commission notice of objection to parole release, if the judge objects to such release."

[7]**23-21.015. Effective Parole Release Date Interview Procedure**

- 4 -

pursuant to section 947.06,[8] the Commission determined that Mr. Spradley did not meet

the criteria for release, declined to authorize an effective parole release date, and

---

(2) The Parole Examiner shall interview the inmate and discuss the inmate's institutional conduct. . . .

. . . .

(5) The Parole Examiner shall reduce the recommendation regarding the inmate's institutional conduct to writing and forward the recommendation to the Commission. . . .

. . . .

(9) . . . [T]he Commission shall determine whether the inmate meets the criteria for parole release under the provisions of Section 947.18, F.S. This determination is to be based upon a review of the entire official record in the inmate's case.

[8]**947.06. Meeting; when commission may act**
The commission shall meet at regularly scheduled intervals and from time to time as may otherwise be determined by the chair. . . .  To facilitate the ability of victims and other persons to attend commission meetings, the commission shall meet in various counties including, but not limited to, Broward, Duval, Escambia, Hillsborough, Leon, Miami-Dade, Orange, and Palm Beach, with the location chosen being as close as possible to the location where the parole-eligible inmate committed the offense for which the parole-eligible inmate was sentenced.

ordered a parole-interview interval of seven years.  See Fla. Admin. Code R. 23-

21.015(6), (9)[9]; §§ 947.18,[10] .1745(6).[11]

Almost a year later, Mr. Spradley filed a petition for writ of mandamus in

the Hillsborough County Circuit Court challenging the Commission's denial of parole.

He alleged that the Commission denied his parole and ordered a parole-interview

interval of seven years based on improper considerations.  He asked the trial court to

---

[9]Florida Administrative Code rule 23-21.015 provides, in pertinent part, as follows:

(6) Within thirty (30) days after receipt of the inmate's parole release plan at the Commission headquarters, the full Commission shall determine whether to authorize the effective parole release date. . . .

        . . . .
(9) [T]he Commission shall determine whether the inmate meets the criteria for parole release under the provisions of Section 947.18, F.S.  This determination is to be based upon a review of the entire official record in the inmate's case. . . . If the inmate is found to be ineligible for parole release, . . . the Commission shall enter an order declining to authorize the effective parole release date . . . .

[10]**947.18.  Conditions of parole**
. . .  No person shall be placed on parole until and unless the commission finds that there is reasonable probability that, if the person is placed on parole, he or she will live and conduct himself or herself as a respectable and law-abiding person and that the person's release will be compatible with his or her own welfare and the welfare of society.

[11]**947.1745.  Establishment of effective parole release date**
        . . . .
(6)  . . . [F]or an inmate who has been: (a) Convicted of murder or attempted murder . . . , the commission may schedule a subsequent review under this subsection once every 7 years, extending the presumptive parole release date beyond that time if the commission finds that it is not reasonable to expect that parole would be granted at a review during the following years and states the bases for the finding in writing.

- 6 -

compel the Commission to reconsider properly his release date and review schedule. See §§ 947.18 (considerations for parole release), .1745(6) (seven-year review schedule). The Hillsborough County Clerk of Court transferred the petition to the Pinellas County Circuit Court where Mr. Spradley was originally convicted and sentenced. The trial court there dismissed the petition.

## Exhaustion of Administrative Remedies

In dismissing the petition, the trial court noted that Mr. Spradley failed to allege that he had exhausted his administrative remedies before the Commission. See Bush v. State, 945 So. 2d 1207, 1215 (Fla. 2006) (holding mandamus petition is proper remedy after prisoner exhausts administrative remedies); Finfrock v. Fla. Civil Commitment Ctr., 34 So. 3d 777 (Fla. 3d DCA 2010) (stating that appellant neither alleged that he had exhausted administrative remedies nor alleged that none existed). However, this pleading deficiency does not warrant dismissal where the parties did not raise this issue. See Henry v. Santana, 62 So. 3d 1122, 1123, 1129 (Fla. 2011); Mehl v. Tucker, 71 So. 3d 248, 249 (Fla. 2d DCA 2011). In his unsuccessful motion for rehearing, Mr. Spradley advised the trial court that there were no available administrative remedies.

## Improper Venue

The trial court also dismissed Mr. Spradley's petition for improper venue. It concluded that Leon County, where the Commission is based, is the proper venue. "[V]enue in civil actions brought against the state or one of its agencies or subdivisions, absent waiver or exception, properly lies in the county where the state, agency, or subdivision, maintains it principal headquarters." Bush, 945 So. 2d at 1212 (quoting Carlisle v. Game & Fresh Water Fish Comm'n, 354 So. 2d 362, 363-63 (Fla. 1977)).

- 7 -

This "home venue privilege," Fish & Wildlife Conservation Comm'n v. Wilkinson, 799

So. 2d 258, 260 (Fla. 2d DCA 2001), "promotes orderly and uniform handling of state

litigation and helps to minimize expenditure of public funds and manpower." Carlisle,

354 So. 2d at 364. See also Barr v. Fla. Bd. of Regents, 644 So. 2d 333, 337 (Fla. 1st

DCA 1994) (stating that litigating cause in Alachua County under sword-wielder doctrine

would minimize costs and facilitate taking evidence because witnesses were there).

A plaintiff may defeat the home venue privilege under the "sword-wielder"

exception[12] recognized in Department of Revenue v. First Federal Savings & Loan

Ass'n, 256 So. 2d 524 (Fla. 2d DCA 1971).

> The question to be answered in these cases may be said to
> be whether the state is the initial sword-wielder in the matter
> and whether the plaintiff's action is in the nature of a shield
> against the state's thrust.  If so, then the suit may be
> maintained in the county wherein the blow has been or is
> imminently about to be laid on.  On the other hand if plaintiff
> is the prime mover in the premises against a passive or
> dormant state or state agency then venue lies properly in the
> county wherein the state or the agency maintains its official
> headquarters.

Id. at 526.

> The so called 'sword-wielder' doctrine applies only in those
> cases where the official action complained of has in fact
> been or is being performed in the county wherein the suit is
> filed, or when the threat of such action in said county is both
> real and imminent.
>         . . . .
> This exception to the common law privilege of venue is
> limited to those cases wherein the primary purpose is to
> obtain direct judicial protection from an alleged unlawful
> invasion of the constitutional rights of the plaintiff within the
> county where the suit is instituted, because of the

---

[12]We have alternatively described this exception as "[a] waiver of the state's general venue privilege [that] occurs where a real and imminent deprivation of the claimant's constitutional rights can be shown." Dep't of Labor & Emp't Sec. v. Summit Consulting, Inc., 594 So. 2d 862, 863 (Fla. 2d DCA 1992).

enforcement or threatened enforcement by a state agency of a statute, rule or regulation . . . .

<u>Carlisle</u>, 354 So. 2d at 365; <u>see also</u> <u>Dep't of Revenue</u>, 256 So. 2d at 526.

Mr. Spradley argues that the sword-wielder exception applies to his case and that the trial court departed from the essential requirements of law in dismissing his case and failing to transfer it to the proper venue, which he claims is Hillsborough County where the Commission's June 2013 hearing occurred.

<u>Unlawful Invasion of a Right</u>

The Commission argues that the sword-wielder doctrine does not apply because there is no constitutional right to parole. <u>See</u> <u>Cochran v. State</u>, 476 So. 2d 207, 208 (Fla. 1985). However, "there is a right to a proper consideration for parole." <u>Moore v. Fla. Parole & Probation Comm'n</u>, 289 So. 2d 719, 720 (Fla. 1974), <u>superseded by section 120.52(10), Fla. Stat. (1983), on other grounds as stated in</u> <u>Johnson v. Fla. Parole & Prob. Comm'n</u>, 543 So. 2d 875, 875 (Fla. 4th DCA 1989). <u>Moore</u> did not involve a sword-wielder-doctrine home-venue challenge, but its holding supports Mr. Spradley's argument that his case could qualify for sword-wielder venue if the Commission violated his right to a proper parole consideration.

Our review of the case law indicates that courts apply the sword-wielder principle to allow venue in the county where the plaintiff's person or affected property is located. <u>See, e.g.</u>, <u>Pinellas Cty. v. Baldwin</u>, 80 So. 3d 366 (Fla. 2d DCA 2012) (applying sword-wielder exception to Pinellas County governmental taking of landowner's property in Hillsborough County); <u>Dep't of Labor & Emp't Sec.v. Lindquist</u>, 698 So. 2d 299 (Fla. 2d DCA 1997) (affirming venue in plaintiff's county where Department of Labor physically seized fishing nets there without procedural due

process); Dep't of Revenue v. Arvida Corp., 315 So. 2d 235 (Fla. 2d DCA 1975) (holding Department notice that tax warrant and execution for allegedly past due taxes had issued was real and imminent official action justifying suit in taxpayers' county); Rehman v. Fla. Dep't of Law Enf't, 681 So. 2d 854 (Fla. 5th DCA 1996) (holding "sword wielder" venue lay in Orange County to which FDLE employee claimed FDLE transferred him in retaliation for exposing financial waste at his previous FDLE job in Leon County); Barr, 644 So. 2d 333 (reversing transfer of venue to Leon County for university instructor's suit for retaliatory discharge in Alachua County where Board of Regents terminated her employment); Bd. of Med. Exam'rs v. Kadivar, 482 So. 2d 501 (Fla. 4th DCA 1986) (affirming venue in St. Lucie County for suit alleging deprivation of his right to practice medicine there); Graham v. Vann, 394 So. 2d 178 (Fla. 1st DCA 1981) (holding sword-wielder exception applied in suit for intolerable prison conditions where plaintiff was imprisoned and where rights were allegedly being violated); Dep't of Transp. v. Morehouse, 350 So. 2d 529 (Fla. 3d DCA 1977) (holding venue proper in Dade County where Department of Transportation terminated plaintiff's employment for filing to run for public office); Swinscoe v. State, 320 So. 2d 11 (Fla. 4th DCA 1975) (reversing order transferring venue to Leon County where taxpayers sued in Broward County where Department of Revenue executed and recorded a tax warrant against them).  In Hancock v. Wilkinson, 407 So. 2d 969, 970 (Fla. 2d DCA 1981), in which a boarding home operator and occupants alleged state agency harassment against them in Highlands County, we described the type of plaintiffs' allegations necessary to apply the sword-wielder exception as those that "reflect an attempt on their part to shield themselves against what they claim are unconstitutional blows which the Department

- 10 -

has directed towards them in Highlands County." Id. at 970 "[T]he suit may be maintained in the county wherein the blow has been or is imminently about to be laid on." (Id. quoting Dep't of Revenue, 256 So. 2d at 526). The issue, then, is not where the Commission makes the decision, but where it affects the plaintiff.

Even though the Commission made the decision at its Tampa meeting, it directed the "blow" toward Mr. Spradley in Union County, where he was incarcerated. Suit in Hillsborough County would not "promote[] orderly and uniform handling of state litigation" or save money and manpower. If the sword-wielder exception applied here, Union County would be the proper venue. However, Mr. Spradley has not made this claim. Accordingly, the default, and proper, venue is Leon County.

Rather than dismissing the petition, the trial court should have transferred it to Leon County. See Sullivan v. Fla. Parole Comm'n, 920 So. 2d 106, 107 (Fla. 2d DCA 2006); McClain v. Crawford, 815 So. 2d 777, 778 (Fla. 2d DCA 2002) ("[T]he remedy for improper venue is a transfer to the proper venue, not dismissal."). The Commission concedes as much.

## Conclusion

The trial court departed from the essential requirements of law in dismissing the mandamus petition. See Bush, 945 So. 2d at 1214-15 (holding transfer to proper venue rather than dismissal was preferred remedy where mandamus petition filed in improper venue); Vierra v. State, 980 So. 2d 588, 589 (Fla. 2d DCA 2008); Sullivan, 920 So. 2d at 107; Gibson v. Fla. Parole Comm'n, 895 So. 2d 1291 (Fla. 5th DCA 2005) ("Where the correct remedy and venue are apparent to the trial judge, it serves judicial economy to transfer the case rather than simply dismiss it.").

Therefore, we grant the petition for writ of certiorari. We approve the trial court's order to the extent it holds that proper venue is in Leon County, quash the order to the extent it dismissed the petition, and remand for transfer of the case to the Second Judicial Circuit Court in and for Leon County for further proceedings.

Petition granted, order affirmed in part and quashed in part, and case remanded.

NORTHCUTT and SALARIO, JJ., Concur.