# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

KYLE E. McCLAMMA,

Appellant,

v.

MARK GLASS, COMMISSIONER,
DEPARTMENT OF LAW ENFORCEMENT,

Appellee.


No. 2D23-1366

_____

March 27, 2024

Appeal from the Circuit Court for Hillsborough County; Lawrence M. Lefler, Judge.

Kyle E. McClamma, pro se.

Ashley Moody, Attorney General, Tallahassee, and Caitlin Wilcox, Assistant Attorney General, Tampa, for Appellee.


MORRIS, Judge.

Kyle E. McClamma appeals from an order dismissing his complaint for a declaratory judgment and injunctive relief with prejudice. In 2006, McClamma was convicted and sentenced for one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (2005). McClamma completed his federal prison sentence, and in 2021, his lifetime supervised release was terminated early. He was also

successfully discharged from sex offender treatment and deemed to be at a low risk for recidivism. In January 2022, McClamma's obligation to register as a sex offender under federal law was terminated early.

However, as a result of McClamma's federal conviction, he was required to register here in Florida as a sex offender. *See* 34 U.S.C. § 20913 (2006). There is no dispute that he first registered in Florida in 2006, following his conviction.

McClamma filed a complaint in Hillsborough County Circuit Court against Mark Glass[1] in his official capacity as Commissioner of the Florida Department of Law Enforcement. In his complaint, McClamma argued that the Florida sex offender registration and reporting requirements set forth in section 943.0435, Florida Statutes (2021), violate his substantive due process rights because they (1) infringe on his fundamental right to privacy under article I, section 23, of the Florida Constitution; (2) infringe on his fundamental right to intrastate travel under article I, section 2, of the Florida Constitution; (3) infringe on his fundamental right to his reputation under article I, section 2, of the Florida Constitution; and (4) apply an irrebuttable presumption of a high risk of recidivism to McClamma. McClamma argued that as applied to him, the registration and reporting requirements do not serve a compelling state interest and are not the least restrictive means to accomplish their purported purpose.

Glass filed a motion to dismiss and amended motion to dismiss. In the amended motion, Glass argued (1) that McClamma failed to adhere to

_____

[1] The complaint originally named Richard L. Swearingen as the defendant. However, during the pendency of the case, Glass replaced Swearingen as the Commissioner of the Florida Department of Law Enforcement. As a result, Glass was automatically substituted as a party.

the procedural requirements set forth in Florida Rule of Civil Procedure 1.071; (2) that McClamma lacked standing; (3) that McClamma's claim relating to the irrebuttable presumption of a high risk of recidivism was barred by the statute of limitations; (4) that McClamma failed to allege a justiciable controversy; (5) that McClamma's as-applied challenge does not impact his state constitutional rights; and (6) that the complaint was brought in an improper venue. McClamma filed a reply, but after a brief hearing, the trial court granted the amended motion with prejudice, based on all six grounds argued by Glass. The trial court's written order is abbreviated in nature, listing the same six reasons listed in Glass's amended motion without much elucidation. The trial court subsequently denied McClamma's motion for rehearing.

We conclude that the trial court erred in dismissing McClamma's complaint with prejudice; a reversal is required on that basis alone. We also conclude that Hillsborough County appears to be the correct venue for the action, but even if it was not, the trial court erred in dismissing rather than transferring the action. Because McClamma will be provided with an opportunity to file an amended complaint based on our disposition, it is possible that an amendment may rectify any problems relating to his alleged failure to comply with Florida Rule of Civil Procedure 1.071, his alleged failure to plead a real and immediate injury sufficient to establish standing, his alleged failure to allege a justiciable controversy, and his alleged failure to state a claim for an as-applied challenge to his constitutional rights. Consequently, it is unnecessary for this court to determine at this juncture whether the trial court properly ruled on those issues. The issue of whether the statute of limitations was properly applied as a bar to McClamma's claim of an irrebuttable presumption of a high risk of recidivism is a closer question,

3

but for the reasons explained herein, McClamma may also be able to amend this claim.

ANALYSIS

"We review an order of dismissal with prejudice de novo." *Ellerson v. Moriarty*, 331 So. 3d 767, 769 (Fla. 2d DCA 2021) (citing *McManus v. Gamez*, 276 So. 3d 1005, 1007 (Fla. 2d DCA 2019)).

When ruling on a motion to dismiss, "a trial court is ordinarily bound to the allegations within the four corners of the complaint and it must accept the material allegations as true." *Van Loan v. Heather Hills Prop. Owners Ass'n*, 216 So. 3d 18, 22 (Fla. 2d DCA 2016) (citing *Consuegra v. Lloyd's Underwriters at London*, 801 So. 2d 111, 112 (Fla. 2d DCA 2001)).

> I.    *The trial court erred by dismissing the complaint with prejudice without providing McClamma with an opportunity to amend.*

"Generally, leave to amend a complaint 'shall be given freely when justice so requires.' " *Butler Univ. v. Bahssin*, 892 So. 2d 1087, 1089 (Fla. 2d DCA 2004) (quoting Fla. R. Civ. P. 1.190(a)). "When a complaint fails to state a cause of action, the proper approach is for the trial court to allow leave to amend, not to dismiss the complaint with prejudice." *Id.* (citing *Fla. Nat'l Org. for Women, Inc. v. State*, 832 So. 2d 911, 915 (Fla. 1st DCA 2002)). "Leave to amend may be denied when . . . 'it conclusively appears there is no possible way to amend the complaint to state a cause of action.' " *Id.* (quoting *Fla. Nat'l Org. for Women, Inc.*, 832 So. 2d at 915).

Glass contended at oral argument that McClamma could have filed an amended complaint prior to entry of the trial court's order. But McClamma's failure to do so is not an absolute bar to permitting an amendment at a later time. There is no dispute that McClamma sought leave to amend in his motion for rehearing. No prejudice would result to

4

Glass from permitting an amendment, and we are not convinced that this is a situation where "it conclusively appears there is no possible way to amend the complaint to state a cause of action." *Id.* (quoting *Fla. Nat'l Org. for Women, Inc.*, 832 So. 2d at 915). Thus the trial court's order must be reversed on this basis.

> II.    *The sword-wielder exception to the home venue privilege suggests that Hillsborough County was the proper venue, but even if the suit should have been filed in Leon County, the proper remedy was to transfer rather than to dismiss the action.*

The sword-wielder exception to the home venue privilege described in *Carlile v. Game & Fresh Water Fish Commission*, 354 So. 2d 362 (Fla. 1977), suggests that venue in Hillsborough County was proper, which calls into question the trial court's conclusion that it was not. But even if the trial court was correct, its handling of the case was erroneous.

We review a trial court's decision regarding the propriety of the plaintiff's venue selection de novo. *PricewaterhouseCoopers LLP v. Cedar Res., Inc.*, 761 So. 2d 1131, 1133 (Fla. 2d DCA 1999).

In *Carlile*, the plaintiff was injured on land under the control of the Commission, and he filed his suit in Palm Beach County, where the injury occurred. 354 So. 2d at 363. The Commission moved to transfer the case to Leon County, where its principal office was located, or in the alternative, to dismiss for improper venue. *Id.* The circuit court denied the motion, but the Fourth District Court of Appeal reversed and remanded with directions to transfer the cause to Leon County. *Id.* On review, the Florida Supreme Court explained that at common law, the "venue in [Florida] civil actions brought against the state or one of its agencies or subdivisions, absent waiver or exception, properly lies in the county where the state, agency, or subdivision, maintains its principal headquarters." *Id.* at 363-64 (first citing *Smith v. Williams*, 35 So. 2d 844

5

(Fla. 1948); and then citing *Ringling Bros. Barnum & Bailey Combined Shows v. State*, 295 So. 2d 314 (Fla. 1st DCA 1974)). The court went on to explain that one of the exceptions, the " 'sword-wielder' doctrine," only applies "where the official action complained of has in fact been or is being performed in the county wherein the suit is filed, or when the threat of such action in said county is both real and imminent." *Id.* at 365. The court further explained that the focus is on whether it is the state or governmental agency that initially wields the sword and whether the plaintiff's action is being used as a shield; in that case, the plaintiff's suit may be maintained in the county where the blow has been or is likely to soon occur. *Id.* (relying on *Dep't of Revenue v. First Fed. Sav. & Loan Ass'n of Ft. Myers*, 256 So. 2d 524, 526 (Fla. 2d DCA 1971)). The focus then is not on where the state or governmental agency makes the decision but on where it affects the plaintiff. *Spradley v. Parole Comm'n*, 198 So. 3d 642, 648 (Fla. 2d DCA 2015). The court in *Carlile* stressed that the exception was

> limited to those cases wherein the primary purpose is to obtain direct judicial protection from an alleged unlawful invasion of the constitutional rights of the plaintiff within the county where the suit is instituted, because of the enforcement or threatened enforcement by a state agency of a statute, rule or regulation alleged to be unconstitutional as to the plaintiff, and where the validity or invalidity of the statute, rule or regulation sought to be enforced comes into question only secondarily and incidentally to the main issue involved.

354 So. 2d at 365 (first citing *Smith*, 35 So. 2d 844; then citing *Gay v. Ogilvie*, 47 So. 2d 525 (Fla. 1950); and then citing *Ringling Bros. Barnum & Bailey Combined Shows*, 295 So. 2d 314).

In this case, though Glass may oversee the sex offender registry and compile, transmit, and publish offenders' information from the Department's Leon County headquarters, McClamma is affected in

6

Hillsborough County, which is where McClamma lives and is required to register. Accordingly, the sword-wielder exception suggests that Hillsborough County is the proper venue. Yet, even if it were not the correct venue, the proper remedy would be to transfer the case to Leon County rather than to dismiss the case. *See Bush v. State*, 945 So. 2d 1207, 1214 (Fla. 2006); *Spradley*, 198 So. 3d at 648.

It appears to this court that Hillsborough County was the proper venue. But on remand, should the trial court conclude otherwise, it should transfer rather than dismiss the complaint.

> III.    *It is not clear that McClamma's claim regarding an irrebuttable presumption of a high risk of recidivism was barred by the statute of limitations, and McClamma should be provided with an opportunity to amend the claim.*

Finally, although we are reversing the order of dismissal because it was entered with prejudice, making it unnecessary for us to decide the statute of limitations issue as it pertains to McClamma's claim of an irrebuttable presumption of a high risk of recidivism, we write to point out the unique question posed by the facts of this case.

"Declaratory judgment actions are subject to a four-year statute of limitations." *Manatee County v. Mandarin Dev., Inc.*, 301 So. 3d 372, 375 (Fla. 2d DCA 2020); *see also* § 95.11(3)(p), Fla. Stat. (2005) (noting four-year statute of limitations for all causes of action not specifically listed in statute). "The statute of limitations for a constitutional challenge to a statute is triggered by injury." *Doe ex rel. Doe v. Swearingen*, 51 F.4th 1295, 1304 (11th Cir. 2022). Typically, that injury "does not occur until the statute is enforced—in other words, until it is applied." *Id.* (quoting *Hillcrest Prop., LLC v. Pasco County*, 754 F.3d 1279, 1282 (11th Cir. 2014)).

Glass contended below that McClamma's claim that his sexual offender classification under section 943.0435 created an irrebuttable presumption that he had a high risk of recidivism was barred by the statute of limitations. The trial court's order summarily states that McClamma's complaint reflected on its face that he was placed on Florida's sex offender registry in 2006. As a result, the trial court determined that "any complaint he currently has with this classification is barred by the Statute of Limitations."

In his brief with this court and at oral argument, McClamma acknowledged that he had been registered in Florida since 2006. He also acknowledged that in *Swearingen*, the court concluded that the statute of limitations barred the plaintiffs' claim that they were injured by an irrebuttable presumption of dangerousness imposed by the relevant registry law without consideration of their individual risk prior to their placement on the registry. 51 F.4th at 1310. The court explained that the injury was completed when the plaintiffs were initially declared sex offenders and initially required to register and that because the plaintiffs had been designated sex offenders more than twenty years prior to filing their suit, the statute of limitations had expired. *Id.*

McClamma distinguishes his case from *Swearingen*, asserting that while he was required under federal law to register in 2006 as a sex offender in Florida, *see* 34 U.S.C. § 20913, he was not classified as a sex offender under Florida law pursuant to section 943.0435 until he was released from federal supervision in 2021. Thus he contends that his injury was complete at that time and that because he filed his complaint in 2022, his complaint was timely filed.

It is Glass's position that the statute of limitations began to run on McClamma's irrebuttable presumption claim in 2006, when

McClamma—pursuant to federal law—first registered in Florida following his conviction. The trial court apparently agreed with this position. However, McClamma did not qualify as a sex offender under Florida law until he was released from federal supervision in 2021. *See* § 943.0435(1)(h)1.a.(II) (defining a sexual offender as someone who has been convicted of a specified offense and who has been released on or after October 1, 1997, from a sanction imposed for a conviction of a specified offense; sanction is defined as including federal prison and supervised release in Florida or any other jurisdiction).

Thus the issue to be resolved is whether McClamma's injury occurred when he first registered in Florida in 2006, as required by federal law, or whether his injury occurred in 2021, when he first qualified as a sex offender under Florida law. We note that some case law holds that the federal obligation to register as a sex offender within a state "does not depend on, or incorporate, a state-law registration requirement." *United States v. Billiot*, 785 F.3d 1266, 1269 (8th Cir. 2015) (citing generally 42 U.S.C. §§ 16912, 16913[2]); *see also United States v. Thompson*, 431 F. Appx. 2, 3 (1st Cir. 2011) (explaining that federal sex offender registration requirements "are neither conditioned on nor harnessed to state" registration requirements (quoting *United States v. DiTomasso*, 621 F.3d 17, 27 (1st Cir. 2010))); *United States v. Goguen*, 218 F. Supp. 3d 111, 118 (D. Me. 2016) (explaining that defendant's federal registration obligations were independent of his duties to register under state law). If the federal statute is independent of and does not incorporate the Florida statute, then a question remains whether a defendant's federally mandated initial registration in Florida triggers the

_____

[2] These sections have now been transferred to 34 U.S.C. §§ 20912, 20913.

9

running of the statute of limitations for an as-applied constitutional challenge to the Florida statute where the Florida statute's applicability requirements were not met at the time of registration. Yet where the issue is the irrebuttable presumption of a high risk of recidivism—which arguably applied upon McClamma's federally mandated initial registration—there is a question as to whether the applicability of the Florida statute at that time matters for purposes of determining when McClamma was injured. The trial court did not address the interplay of the federal and state statutes, presumably because it was not raised below.[3] But due to our disposition, McClamma will have the opportunity to amend this claim, and should he choose to address this issue, the trial court will then have an opportunity to analyze it.[4] Thus we need not resolve this question in the first instance.

CONCLUSION

The trial court erred by dismissing McClamma's complaint with prejudice. The trial court's order is therefore reversed.

Reversed and remanded.

---

[3] We note that McClamma conceded below that his irrebuttable presumption claim was time-barred pursuant to *Swearingen*. However, this concession may have been in error because *Swearingen* did not address the interplay between the federal and state registration requirements. Regardless, Glass has not raised the issue of invited error, and our disposition moots that issue.

[4] In his brief, McClamma makes arguments relating to the timeliness of his other claims relating to the three-day change in residence requirement, reputational injury, and violation of his right to privacy. However, Glass did not argue below that those claims were barred by the statute of limitations, nor did the trial court make such a finding. It is therefore unnecessary to engage in a full analysis of the timeliness of those claims, though we note that *Swearingen* appears to support the argument that they were either timely filed or saved by the continuing violation doctrine. *See Swearingen*, 51 F.4th at 1305-08.

SLEET, C.J., and LABRIT, J., Concur.

_____

Opinion subject to revision prior to official publication.