[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-10644

_____

JANE DOE,
As Next Friend on Behalf of John Doe #6,
JOHN DOE, 7,
JOHN DOE 1,

Plaintiffs-Appellants,

JOHN DOE 2, et al.,

Plaintiffs,

*versus*

RICHARD L. SWEARINGEN,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-24145-KMW

———————————

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

The Commissioner of the Florida Department of Law Enforcement maintains a sex-offender registry that lists identifying information about registrants. The Commissioner obtains this information directly from the registrant either when he registers, which he must do in person at least twice a year, or when any of his registration information changes, which triggers an in-person report that must take place within forty-eight hours. The plaintiffs here, whose offenses predate the registry, have been subject to this reporting structure since the registry law was enacted in 1997.

Over the past twenty-five years, however, the Florida legislature amended the registry law more than a dozen times. The information collected by the Commissioner now ranges from basic identifying information like a registrant's permanent address to details like the license tag number of his roommate's car. Any change to this information triggers a registrant's duty to report, and failure to comply is a third-degree felony.

The plaintiffs allege that the reporting requirement became intolerable in 2018, when Florida again amended the registry law. Registrants are now required to report any absence from their permanent residence, for any reason, that lasts more than three days. And the Florida legislature imposed a new mandatory-minimum term of supervision for violations of the registry law. The plaintiffs sued the Commissioner of the Florida Department of Law Enforcement in his official capacity, contending that the registry law's previously manageable burdens were rendered unconstitutional by the 2018 amendments.

The constitutionality of the registry law is not before us—we must determine whether the plaintiffs' claims are timely. The plaintiffs sued to remedy various injuries, some caused by the 2018 amendments and some arising from other provisions that have been on the books for several years. The district court dismissed the plaintiffs' claims, agreeing with the Commissioner that the plaintiffs' injuries stem from one-time acts: the enactment of each provision that allegedly injures them. Therefore, under the applicable statute of limitations, they were required to sue within four years of the date that each provision that imposed the challenged burdens was enacted.

We disagree. Although the plaintiffs' injuries undoubtedly originated when the challenged provisions permitted the Commissioner to first injure them, the district court failed to consider

whether the plaintiffs, who are subject to the registration require-
ments day after day, were continually injured by the requirements
within the statutory period. Examining each of the plaintiffs' al-
leged injuries and claims individually, we conclude that the follow-
ing claims are timely or satisfy the continuing violation doctrine:
Count I, Count III(A), Count III(B), Count IV(A), Count IV(B),
Count IV(C) and Count V. Conversely, we conclude that Count II
and Count IV(D) are barred by the statute of limitations. Accord-
ingly, we affirm in part, reverse in part, and remand for proceed-
ings consistent with this opinion.

## I.

### A.

Florida first enacted its registry law as part of the 1997 Public
Safety Information Act. *See* 1997 Fla. Laws Ch. 97-299, § 8, *codified
at* Fla. Stat. § 943.0435 (1997). It initially contained two require-
ments for persons who commit qualifying offenses: a one-time reg-
istration obligation and an ongoing obligation to report changes in
residency. *Id.* § 943.0435(2)–(3) (1997). Satisfying these obligations
required an offender to report in person within forty-eight hours of
the obligation being triggered. *See id.* A residency was defined as
either permanent or temporary, with the latter including any place
where an offender resided for two consecutive weeks or less, ex-
cluding "vacation or an emergency or special circumstance" that
required the offender to change residence for some time. *Id.*
§ 943.0435(2) (1997). Non-compliance with the registry provisions

was punishable as a third-degree felony. *Id.* § 943.0435(6) (1997). In the same legislation, Florida permitted public access to registry information through a toll-free number. *See* 1997 Fla. Laws Ch. 97-299, § 7, *codified at* Fla. Stat. § 943.043 (1997).

Over the next twenty years, these provisions were amended over a dozen times, resulting in a more expansive regulatory regime. Registration became a lifetime obligation, *see* 1998 Fla. Laws Ch. 98-81, § 7, *codified at* Fla. Stat. § 943.0435(11) (1998), with removal a possibility for only some offenders and, even then, only after twenty-five years, *see* 2007 Fla. Laws Ch. 2007-209, § 2, *codified at* Fla. Stat. § 943.0435(11)(a)(1) (2007). Violations of the registry law are still a third-degree felony, but a registrant is limited to asserting a defense of lack of notice one time; that defense is unavailable in future prosecutions. *See* 2004 Fla. Laws Ch. 2004-371, § 2, *codified at* Fla. Stat. § 943.0435(9)(c)–(d) (2004). The informational burdens have also expanded significantly—a registrant is now required to disclose virtually all personal information to the Commissioner. *See, e.g.*, 2014 Fla. Laws Ch. 2014-5, § 5, *codified at* Fla. Stat. § 943.0435(1)(b) (2014) (adding "Internet identifiers" to the information a registrant must provide). The Florida legislature also codified its view that registrants "have a reduced expectation of privacy," 2002 Fla. Laws Ch. 2002-58, § 3, *codified at* Fla. Stat. § 943.0435(12) (2002), and the Commissioner is required to "verify" the address a registrant provides, *see* 1998 Fla. Laws Ch. 98-81, § 7, *codified at* Fla. Stat. § 943.0435(6) (1998). The public can also access information about a registrant *via* the internet, 1998 Fla. Laws Ch.

98-81, § 6, *codified at* Fla. Stat. § 943.043(1) (1998), and a registrant's driver's license must bear a mark identifying him as a sex offender, *see* 2007 Fla. Laws Ch. 2007-207, § 1, *codified at* Fla. Stat. § 322.141(3)(b) (2007).

The registry law also requires registrants to appear in person more often. All registrants are subject to mandatory semi-annual re-registration, *see* 2005 Fla. Laws Ch. 2005-28, § 9, *codified at* Fla. Stat. § 943.0435(14) (2005), and some are required to re-register quarterly, *see* 2007 Fla. Laws Ch. 2007-209, § 2, *codified at* Fla. Stat. § 943.0435(14)(b) (2007). Because the legislature has expanded the information a registrant must provide, the ongoing obligation to update that information is triggered more frequently. *See* 2010 Fla. Laws Ch. 2010-92, § 4, *codified at* Fla. Stat. § 943.0435(2) (2010) ("Any change in the information required to be provided" upon registration shall be reported). And even where the reporting requirements remained the same, the legislature re-defined what constituted a change in the reported information. The definition of a temporary residence, which triggers an in-person report to update an offender's residence, was shortened from a fourteen-day change in residence to five days in 2006. *See* 2006 Fla. Laws Ch. 2006-235, § 1, *codified at* Fla. Stat. § 775.21(2)(g) (2006); *see* Fla. Stat. § 943.0435(1)(c). The exception for vacation or unexpected travel was also eliminated.

The 2018 amendments expanded the registry law in two additional ways. First, the legislature again shortened the definition of temporary residence, changing it from a place where a registrant

resides for five days to three days. *See* 2018 Fla. Laws Ch. 2018-105, § 1, *codified at* Fla. Stat. § 775.21(2)(n) (2018); *see* Fla. Stat. § 943.0435(1)(f). The result is that a registrant must now report in person to a local driver's license or sheriff's office within forty-eight hours of leaving his permanent residence for more than three days. *See* Fla. Stat. § 943.0435(1)(f), (4)(a), (4)(b). Second, the legislature added a new penalty for non-compliance: for violations of the registry statute that do not result in a term of incarceration, a court must impose a "mandatory minimum term of community control." *See* 2018 Fla. Laws Ch. 2018-105, § 2, *codified at* Fla. Stat. § 943.0435(9)(b) (2018). Community control is "intensive, supervised custody in the community" that includes a term of electronic monitoring ranging from six months to two years. *Id.*; *see* Fla. Stat. § 948.001(3), (13).

## B.

The plaintiffs alleged the following facts in their second amended complaint, which we accept as true. The plaintiffs are registered sex offenders who committed qualifying offenses prior to 1997, meaning they were registered for over twenty years prior to the 2018 amendments. John Does 1 and 7 each report in person about eight times per year to re-register and report information changes, such as those caused by travel. Neither has been arrested for violating the registry law, but they fear that the law has become so onerous that an inadvertent failure to register is unavoidable. John Doe 6 suffers from a mental disability that requires him to

depend on his sister, Next Friend Jane Doe, to comply with his registration requirements, including his obligation to report in person four times a year. Before his sister began helping him, John Doe 6 was arrested twice for failing to comply with requirements that he did not understand. Like the other plaintiffs, he fears that the registry law now "virtually [e]nsures his future incarceration."

The plaintiffs sued the Commissioner in October 2018, a few months after the 2018 amendments took effect. The original complaint listed four constitutional claims under 42 U.S.C. § 1983: a claim based on the Ex Post Facto Clause, a claim based on the Eighth Amendment's prohibition of cruel and unusual punishment, and two claims based on the Fourteenth Amendment's guarantee of substantive and procedural due process. The plaintiffs sought declaratory and injunctive relief to prevent the Commissioner from enforcing the statute against them. The plaintiffs later added a claim under the Florida Constitution's right to privacy, Fla. Const. art. I, § 23.

The Commissioner moved to dismiss the complaint, contending in part that "the underlying basis for the [plaintiffs'] claims accrued long ago." The Commissioner read the plaintiffs' claims to complain of burdens related to "registration requirements that first gave rise to their alleged injuries . . . as early as the [registry law's] enactment in 1997." For each claim, the Commissioner traced the alleged injury to an amendment to the registry law and measured the limitations period from that amendment's effective date. The

plaintiffs responded that they were not "challeng[ing] their designation" as sex offenders, but "the constitutionality of second-generation registration burdens and the continuing threat of imprisonment for failing to meet them."

The district court granted the Commissioner's motion to dismiss, concluding that the plaintiffs' claims were time-barred. Because the plaintiffs were subject to the registry law for longer than the four-year limitations period, and because they had not pleaded "that their challenges and alleged injuries [we]re tailored specifically to amendments enacted within the limitations period," the district court concluded that the plaintiffs were prohibited from challenging any requirement enacted outside the limitations period. The district court dismissed the second amended complaint with prejudice. It also denied the plaintiffs' motion to file a third amended complaint. This appeal followed.

## II.

We review *de novo* the district court's ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). Likewise, "[w]e review the district court's interpretation and application of statutes of limitations *de novo*." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) (per curiam) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1278 (11th Cir. 2005)).

### III.

The only question on appeal is whether the plaintiffs' claims are timely. Although the plaintiffs are not seeking damages, they have brought their constitutional claims under 42 U.S.C. § 1983. The statute of limitations for a Section 1983 claim is "governed by the forum state's residual personal injury statute of limitations." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999). In Florida, the parties agree, such an action must be commenced within four years. *See Baker v. Gulf & W. Indus., Inc.*, 850 F.2d 1480, 1482 (11th Cir. 1988) (citing Fla. Stat. § 95.11(3)). Neither party addresses the statute of limitations that applies to a claim under the Florida Constitution. Accordingly, like the parties, we assume without deciding that the same statute of limitations analysis that applies to the plaintiffs' Section 1983 claims applies to their claim under the Florida Constitution.[1]

---

[1] We note that the Eleventh Amendment prohibits federal courts from intruding on state sovereignty by instructing state officials on how to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  But neither party has addressed this issue, and Florida may waive its Eleventh Amendment immunity if it wishes. *See Green v. Graham*, 906 F.3d 955, 961–62 (11th Cir. 2018). Accordingly, we will leave this issue to be addressed on remand. *See Morris v. Washington Metro. Area Transit Auth.*, 702 F.2d 1037, 1040–41 (D.C. Cir. 1983) (raising possible Eleventh Amendment bar *sua sponte* for the parties and the district court to address on remand), *abrogation on other grounds recognized by Jones v. Castro*, 168 F. Supp. 3d 169, 186 (D.D.C. 2016).

The plaintiffs contend that each of their claims is timely because it either challenges provisions in the 2018 amendments or challenges an ongoing violation of their constitutional rights that occurred within the limitations period. The Commissioner responds that the plaintiffs' "claims are each founded on requirements that were legislatively enacted well outside of the four-year statute of limitations." We conclude that neither party is entirely correct: some claims are barred by the statute of limitations, and others are not.

Our discussion proceeds in three parts. First, we explain that the plaintiffs' claims accrued when they were first injured by the actual or threatened enforcement of the allegedly unconstitutional statute. Second, assuming that some or all of plaintiffs' claims accrued before the limitations period, we explain how the continuing violation doctrine may nonetheless allow those claims to be litigated. Third, we apply the statute of limitations and the continuing violation doctrine to the operative complaint injury by injury and claim by claim.[2]

*A.*

We begin with the question whether the plaintiffs' constitutional causes of action accrued more than four years before they

---

[2] We do not address the plaintiffs' challenge to the district court's decision to deny leave to file a third amended complaint because the amended allegations would not lead us to a different result. Accordingly, we rely on the second amended complaint as the operative pleading.

filed suit. The time at which a federal cause of action accrues is a question of federal law, *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987), that "depends on the claim asserted," *Lewis v. City of Chicago*, 560 U.S. 205, 214 (2010). In the usual course, we start the limitations period when the plaintiff was injured. *See Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996).  That is, the statute of limitations begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996) (quoting *Mullinax*, 817 F.2d at 716); *see Wallace v. Kato*, 549 U.S. 384, 388 (2007) (explaining that "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action" (cleaned up)).

The Commissioner suggests that the plaintiffs' claims accrued on the effective date of the statutes that they are challenging. Because most of Florida's registry law has been in place in some form for many years, the Commissioner argues that all the plaintiffs' claims accrued before the limitations period. In response, the plaintiffs argue that the 2018 amendments provide the relevant effective date. To that end, much of the operative complaint is directed to alleging that provisions in the 2018 amendments modified the law's pre-existing requirements.

We believe neither party is correct. The statute of limitations for a constitutional challenge to a statute is triggered by injury. In the usual case, "the harm inflicted by the statute . . . does not occur until the statute is enforced—in other words, until it is

applied." *Hillcrest Prop., LLC v. Pasco Cnty.*, 754 F.3d 1279, 1282 (11th Cir. 2014) (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir.1993)). That is why a constitutional cause of action lies exclusively against an official with enforcement power and not the legislature itself. *See Ex parte Young*, 209 U.S. 123, 149–50, 155–56 (1908). And it is why a plaintiff lacks standing to challenge legislation that will not be enforced. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1204 (11th Cir. 2021) (recent legislation that "would" cause an injury if enforced against the plaintiff was not enough to maintain a cause of action); *Doe v. Pryor*, 344 F.3d 1282, 1287 (11th Cir. 2003) (no claim over existing law without "credible threat" of enforcement).

This insight—that a plaintiff must allege an injury stemming from the enforcement or threat of enforcement of an unconstitutional law against him—means that a constitutional claim like the plaintiffs' does not necessarily run from a statute's effective date. Because the enforcement of an unconstitutional statute causes an injury, a person can challenge a statute enacted long ago based on a new threat of enforcement; conversely, he cannot challenge a statute enacted yesterday if there is no threat of enforcement against him today. *See Support Working Animals, Inc.*, 8 F.4th at 1204; *see* 13B Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3532.5 (2d ed. 1987) (noting that in many cases, courts "refuse[] to determine the validity of a criminal statute that apparently applies to the plaintiff's present or intended future conduct" for "want of threats of prosecution"). The effective date of a statute

may be necessary to start the limitations clock for a constitutional claim, but it is not sufficient.

We have recognized one exception to this general rule: a facial claim for the deprivation of a property interest. *See Hillcrest Prop.*, 754 F.3d at 1283. The theory of a facial property takings claim "is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest." *Id.* at 1282 (quoting *Levald*, 998 F.2d at 688). That harm, if it occurs at all, "occurs immediately upon, and because of, the statute's enactment: the property value depreciates and a taking occurs as soon as the statute goes into effect." *Id.* at 1282 (citing *Levald*, 998 F.2d at 688). Accordingly, a plaintiff can bring a facial challenge to the taking of a property interest at the very moment of the statute's effective date.

Here, of course, the plaintiffs are bringing commonplace constitutional claims against the continued enforcement of laws that impose criminal penalties for noncompliance. The Commissioner is therefore wrong that the plaintiffs' claims accrued when Florida's registry law first became effective, and the plaintiffs are wrong to the extent they argue that the 2018 amendment restarted the clock on claims that could have been brought earlier. To determine when the plaintiffs' claims accrued, we cannot rely on effective dates. Instead, we must review the operative complaint claim by claim to assess when the plaintiffs were injured by the allegedly unconstitutional actions they are challenging.

B.

Even if some of their claims accrued more than four years before this lawsuit, the plaintiffs argue that the continuing violation doctrine allows them to litigate. "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006). If a defendant's actions violate a plaintiff's rights on a repeated or ongoing basis, then a cause of action may be timely even if the first violation took place outside the statute of limitations. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448–49 (11th Cir. 1993). As relevant here, a law inflicting a "'continuing and accumulating harm'" on a plaintiff "actively deprive[s]" that plaintiff of his "asserted constitutional rights every day that it remain[s] in effect." *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) (quoting *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968)).

That said, we have held that a plaintiff must identify more than a present harm from a past act to satisfy the continuing violation doctrine. A prior violation of a plaintiff's constitutional rights is not a continuing violation simply because its effects linger into the present. Instead, we must "distinguish[] between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." *Calloway*, 986 F.2d at 448 (internal quotation marks omitted) (quoting *Beavers v. Am. Cast Iron Pipe Co.*, 975

F.2d 792, 796 (11th Cir. 1992)). Only ongoing violations satisfy the continuing violation doctrine and remain timely despite accruing outside the statutory limitation period.

To sort one-time violations from continuing ones, we sometimes consider the actions of the defendant. For example, in *McGroarty v. Swearingen*, we held that merely publishing a sex-offender registry is a one-time act that is a single alleged violation. 977 F.3d 1302, 1307–08 (11th Cir. 2020). The challenger, who had moved out of the state and had "no continuing obligations to update his registration," *id.* at 1307 n.4, alleged that a state agency's "continu[ing] to maintain and disseminate [his] personal information on [the defendant's] public website" was a continuing violation, *id.* at 1305, 1307. But the plaintiff "specifically disavowed the argument that a new violation occurred each time the [defendants] updated their website or re-posted information," *id.* at 1307 n.5, leaving him only with a challenge to "[t]he initial publication of [his] information," *id.* at 1308. We determined that publication was plainly "a 'one time' act" that did not extend the statute of limitations, "even though [the plaintiff] [wa]s experiencing 'present consequences' of that action." *Id.* at 1308 (quoting *Carter v. West Pub. Co.*, 225 F.3d 1258, 1263 (11th Cir. 2000)). We have likewise found "a one time act with continued consequences" where a prisoner sued over a one-time change to his eligibility for parole. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003).

In addition to distinguishing continuing violations from the present effects of one-time violations, we also must sort a continuing violation, on the one hand, from a series of repeated violations that result in related harms, on the other. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (explaining with respect to a discrimination claim that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). Repeated similar violations are not the same as a single violation of an ongoing nature. See id. at 112. When a discrete violation "gives rise to a new cause of action," then each new violation "begins a new statute of limitations period as to that particular event." Knight v. Columbus, 19 F.3d 579, 582 (11th Cir. 1994). Accordingly, we have held that, when a defendant takes separate and discrete acts that repeatedly violate the law, the continuing violation doctrine does not apply. Id. at 580–82. Instead, a plaintiff may seek to remedy the discrete violations that occurred within the limitations period. In Knight v. Columbus, for example, we concluded that the plaintiffs' alleged right to be paid overtime was "violated each time the [defendant] issued . . . a paycheck that failed to include payment for overtime hours actually worked." Id. at 581 (emphasis added). The defendant's actions amounted to "a series of repeated violations of an identical nature" that progressed into the limitations period, which allowed the plaintiffs to sue for lost wages during that period but not before. Id. at 582.

Here, the plaintiffs argue that the continuing violation doctrine applies to all their claims because the Commissioner's ongoing threat of enforcement that began in the past continues to violate their rights in the present day. *See Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019) (continuing violation doctrine applies "[w]hen the continued enforcement of a statute inflicts a continuing or repeated harm"); *Kuhnle*, 103 F.3d at 521–22 (substantive due process claim survives statute of limitations because the challenged law "barred [the plaintiff] from using the roads in question on an ongoing basis"). At this juncture, the plaintiffs do not argue that they have experienced a series of related but discrete violations that occurred in the limitations period. Instead, they disclaim the argument that "any single act independently violated their constitutional rights." For his part, the Commissioner argues that the plaintiffs are suing over the lingering effects of a one-time injury caused by their initial designation as sex offenders. As with the accrual date of plaintiffs' claims, we believe the only way to apply the continuing violation doctrine is injury by injury and claim by claim.

## C.

We now turn to an injury-by-injury and claim-by-claim analysis of the plaintiffs' operative complaint. To determine whether the plaintiffs' claims are time-barred, we must "first . . . identify the alleged injuries, and then . . . determine when plaintiffs could have sued for them." *Rozar*, 85 F.3d at 562. Next, we consider whether any of those injuries resulted from violations that occurred before the limitations period and, if so, whether the violations continued

into the limitations period such that the continuing violation doctrine applies. *See Calloway*, 986 F.2d at 448.

As we see it, the plaintiffs allege that Florida's enforcement of its laws has inflicted four injuries, and they bring multiple claims to remedy those injuries. First, the plaintiffs allege that the Commissioner's threatened enforcement of recent amendments has imposed a purportedly unconstitutionally vague "strict liability" scheme enforced by mandatory minimum sentences. Second, the plaintiffs allege that the Commissioner has applied the registry law to injure their reputation. Third, the plaintiffs contend that the registry law unconstitutionally requires them to take—or alter their conduct to avoid—actions that are time-consuming and burdensome, such as registering and re-registering under the law. Fourth, the plaintiffs allege that their very designation as sex offenders violates the Constitution. We address each asserted injury in turn.

1.

The plaintiffs say they are suing to remedy three injuries specifically caused by amendments enacted within the limitations period. In support of their procedural due process claim (Count III(A)), the plaintiffs contend that the 2018 mandatory-minimum provision rendered the registry law a "strict liability" scheme that criminalizes non-dangerous offenses. The plaintiffs also allege that the registry law's reporting requirements for travel-related residence changes violate their procedural due process rights by being unconstitutionally vague (Count III(B)). They contend that the terms "day," "place," "destination," "within 48 hours," "secure,"

and "update" are vague as used in the provision requiring an in-person report for a three-day change in residence. And they contend that under either procedural due process theory, the registry law subjects them to the constant threat of serving a mandatory-minimum sentence for "even inadvertent and unknowing violations" of the registry law. The plaintiffs' substantive due process claim likewise asserts an injury allegedly caused by recent amendments. Specifically, they contend that requiring registrants to report a three-day change in residence discourages them from traveling, thereby violating their right to intrastate and interstate travel (Count IV(A)).

These injuries are expressly related to the threatened enforcement of provisions added to the registry law in 2018. *See* 2018 Fla. Laws Ch. 2018-105, §§ 1, 2. Because the plaintiffs did not suffer these injuries before the threatened enforcement of the amendments, these claims did not arise until after 2018. The plaintiffs sued the Commissioner in 2018, well within the four-year statute of limitations. Therefore, these claims are timely.

2.

The plaintiffs also seek to remedy an alleged reputational injury. They contend that the Commissioner "aggressively signals to the public that . . . registrant[s] will always be a menace." The Commissioner does so by carrying out its duty to "verify" the plaintiffs' addresses through community- and neighborhood-wide notification, and by maintaining an internet registry that makes the plaintiffs' registration information available to the public. The plaintiffs

invoke this injury throughout the complaint, seeking to remedy it in Count I under the Ex Post Facto Clause, Count IV(B) under a substantive due process theory, and Count V under the Florida Constitution.

The Commissioner contends that the plaintiffs could have sued over this reputational injury long before now because some of the plaintiffs' information has been publicly available since an early version of the registry law. The plaintiffs seem to concede that they first suffered this reputational injury before the limitations period. And we agree that these claims arose before the limitations period. Florida law has long required publication of sex offenders' information; therefore, the plaintiffs could have sued over this reputational injury many years ago.

We believe, however, that these time-barred claims are saved under the continuing violation doctrine. The plaintiffs argue that the Commissioner's enforcement of certain provisions continues to harm the plaintiffs' reputations on an ongoing basis. Because the Commissioner sends officers to the plaintiffs' neighborhoods to verify where they live on an ongoing basis, the plaintiffs contend that this enforcement sends a continuing signal to their neighbors that they are dangerous people, inflicting reputational harm. The plaintiffs further allege that the Commissioner *must* continue to take these actions regularly to comply with his duties under the statute. *See Ctr. for Biological Diversity*, 453 F.3d at 1334 ("To determine whether the continuing violation doctrine applies, we

must consider the text of the relevant statute . . . ."). The Commissioner's ongoing enforcement actions distinguish this case from *McGroarty*. *See* 977 F.3d at 1308 n.6. (explaining that McGroarty "allege[d] only passive effects from a one-time act"). And, unlike the plaintiff in *McGroarty*, the plaintiffs here have a continuing duty to update their registration information under the threat of prosecution, which allows the publication of their updated information on a publicly available registry. *Compare* 977 F.3d at 1307 n.4 ("no continuing obligations to update his registration") *with* Doc. 102, ¶ 65 ("Doe 1 lives with pervasive dread of arrest for inadvertent failure to register."). Because the plaintiffs' reputational injury depends on continuing enforcement actions taken by the Commissioner within the limitations period, we believe the continuing violation doctrine applies.

The Commissioner responds that the plaintiffs should not benefit from the continuing violation doctrine because they knew about and could have filed a suit about these injuries sooner. We have held that, because the continuing violation doctrine is equitable in nature, "[i]f an event or series of events should have alerted a reasonable person to act to assert his rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." *Ctr. for Biological Diversity*, 453 F.3d at 1335. The Com-

missioner has not identified any prejudice arising from the plaintiffs' delay.[3] And we think the plaintiffs have alleged an adequate justification for waiting to bring their claims. In the operative complaint, the plaintiffs allege that the original Florida registry statute has grown more and more burdensome over the years and that the 2018 amendments were the proverbial "straw that broke the camel's back." They allege that more recent amendments to the registry law make it, arguably, different from similar laws that have been upheld as constitutional. See Smith v. Doe, 538 U.S. 84 (2003). Specific to their asserted reputational injury, the plaintiffs allege that the recent amendment requires "vastly more information to be disclosed," "requires prompt in-person reporting of any changes," and "expressly endorses aggressive notification to the public." At this stage of the case, we believe the plaintiffs have sufficiently alleged facts that excuse their delay in bringing these claims.

---

[3] We think this aspect of the continuing violation doctrine is akin to laches. We have applied the doctrine of laches to claims for equitable relief under Section 1983. Grayson v. Allen, 491 F.3d 1318, 1332 (11th Cir. 2007). Laches justifies denying equitable relief when a plaintiff unreasonably delays in asserting his rights to the prejudice of the defendant. Laches, Black's Law Dictionary (11th ed. 2019). The equitable analysis under the continuing violation doctrine is similar. If the continuing violation doctrine allows an otherwise time-barred claim for equitable relief under Section 1983, laches will not bar equitable relief for that claim and vice versa.

3.

Next, the plaintiffs contend that the registry law unconstitutionally requires them to take—or alter their conduct to avoid—actions that are time-consuming and burdensome. Under their Ex Post Facto Clause claim (Count I), they allege that the obligation to register, re-register, and report changes to personal information imposes an affirmative disability or restraint on them by requiring in-person reports "multiple times a year for trivial changes to registered information and short trips from home." The plaintiffs make the same allegation about the law's "oppressive burdens" in their substantive due process claim (Count IV(C)).

The Commissioner argues that these claims are untimely because the plaintiffs have been subject to registration and re-registration since the registry law's initial version. One could argue that a registered sex offender suffers a discrete injury each time he or she is made to register or re-register, such that a new claim accrues each time and, therefore, the plaintiffs may bring timely claims for any injuries that occurred within the limitations period. *See Knight*, 19 F.3d at 582. But the plaintiffs have not made that argument to us, and their complaint alleges ongoing injuries from their continuing duty to comply with the law, including injuries that first occurred long before the limitations period. Accordingly, as they have been pleaded, the plaintiffs' causes of action under the Ex Post Facto Clause and substantive due process accrued before the limitations period.

Again, however, we believe the plaintiffs have alleged a continuing violation. The registry law requires the plaintiffs to make multiple in-person reports each year, even if nothing about their registration information changes. In addition to that requirement, each day the plaintiffs must try to determine whether an action they take—whether, for example, they wish to purchase a new car, book a weekend trip, or create a new online account—requires making an in-person report. *See* Fla. Stat. § 943.0435(2)(b) (2018). The complaint contends that these reports are time-consuming and burdensome, and the plaintiffs allege that they have forgone certain opportunities because of the likelihood that they would have to report information to the Commissioner. Contrary to the Commissioner's suggestion, this injury is not caused by the plaintiffs' initial designation as sex offenders, but by the Commissioner's continuing threat of enforcement of the registration and re-registration requirements. *See McGroarty*, 977 F.3d at 1308. The plaintiffs allege that the Commissioner's ongoing threat of enforcement continues to violate their rights each time they forego an opportunity out of fear of enforcement. See *Ctr. for Biological Diversity*, 453 F.3d at 1334. For this reason, any injury caused by the ongoing duty to register supports a cause of action against the registration provisions.

As with the plaintiffs' claims about reputational injury, the Commissioner argues that the plaintiffs should have filed suit about these injuries sooner and that it would be inequitable to ap-

26                    Opinion of the Court                    21-10644

ply the continuing violation doctrine. But, again, the plaintiffs suf-
ficiently allege in the operative complaint that they were justified
in waiting, and the Commissioner has not identified any prejudice
arising from the plaintiffs' delay. Specific to these asserted injuries,
the plaintiffs allege that they were prompted to file suit because of
recent amendments that require them to re-register and to register
more frequently. Again, at this early stage of the case, we believe
the plaintiffs have sufficiently alleged facts that excuse any delay in
bringing these claims.

4.

Fourth and finally, the plaintiffs argue that they have been
injured by their very classification as sex offenders. The plaintiffs
contend that they are being unconstitutionally punished under the
Eighth Amendment (Count II) because the law imposes obligations
on them "until they die" without any individualized assessment of
their risk of re-offense. Likewise, their substantive due process
claim (Count IV(D)) asserts an injury caused by the "irrebuttable
presumption" of dangerousness imposed by the registry law with-
out regard to individual risk. The plaintiffs' complaint clearly states
when this injury occurred: they contend that an individualized as-
sessment of risk should have been in place "before requiring regis-
tration." Thus, any cause of action based on this injury was com-
plete when the plaintiffs were designated as sex offenders and ini-
tially required to register.

We believe the counts about this alleged injury are based on nothing more than the lingering effects of the plaintiffs' initial designation as sex offenders, which occurred over twenty years prior to this lawsuit. The plaintiffs were either provided with appropriate process before they were "punished" by being placed on the list, or they were not. Either way, their claim was complete at the time they were categorized as sex offenders and made subject to the law's requirements. The continuing violation doctrine does not save this kind of claim. *See Lovett,* 327 F.3d at 1183; *Bird v. Dep't of Hum. Servs.,* 935 F.3d 738, 739 (9th Cir. 2019) (due process challenge to placement on a child abuse registry is not saved by continuing violation doctrine). Accordingly, the time for bringing a cause of action based on this injury has expired.

## IV.

For the foregoing reasons, we conclude that the following claims are timely or satisfy the continuing violation doctrine: Count I, Count III(A), Count III(B), Count IV(A), Count IV(B), Count IV(C) and Count V. We conclude that Count II and Count IV(D) are barred by the statute of limitations. Accordingly, the district court's judgment is **AFFIRMED IN PART, REVERSED IN PART**, and **REMANDED** for proceedings consistent with this opinion.

21-10644            PRYOR, C.J., Concurring            1

WILLIAM PRYOR, Chief Judge, Concurring:

I concur in the panel opinion. I write separately to explain why it is proper for this Court to raise Eleventh Amendment immunity *sua sponte*. *See* Maj. Op. at 10 n.1. Though we are not *required* to raise this issue, *see Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 515–16 n.19 (1982), this case presents weighty reasons to do so. *See, e.g.*, *Atl. Healthcare Benefits Tr. v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) (raising Eleventh Amendment issue *sua sponte*); *Raj v. La. State Univ.*, 714 F.3d 322, 329 (5th Cir. 2013) (same); *cf. Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) ("We believe that, because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*.").

We have explained that the "nature and purposes of Eleventh Amendment immunity suggest that it is a threshold issue" and that "unnecessarily postpon[ing]" a ruling on the issue does not serve the purposes of the Amendment. *Bouchard Transp. Co. v. Fla. Dep't of Env't Prot.*, 91 F.3d 1445, 1448–49 (11th Cir. 1996). The Amendment "deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119–20 (1984). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106.

Delaying a ruling on Eleventh Amendment immunity also does not promote judicial economy. Consider that *Pennhurst*, the landmark decision on this issue, was the culmination of a decade of litigation and was the second decision by the Supreme Court in that litigation. Resolving issues of Eleventh Amendment immunity at the earliest opportunity helps avoid that kind of protracted and unnecessary litigation. The panel opinion mentions this threshold issue, without deciding it, only to alert the district court and the parties that it should be addressed as soon as possible. *See Patsy*, 457 U.S. at 515–16 n.19 (raising Eleventh Amendment issue *sua sponte* and declining to decide it because the district court was better positioned to address immunity in the first instance on remand).