**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-11703

_____

JAMAAL ALI BILAL,

 f.k.a. John L. Burton,
 a.k.a. Superman,

                *Plaintiff-Appellant,*

*versus*

JEFFREY BENOIT,

 Ph.D.,

JOHN HODGES,

 Ph.D.,

TED SHAW,

 Ph.D.,

DEPARTMENT OF CHILDREN FAMILY SERVICES,

GREGORY PRITCHARD,

 Ph.D., et al.,

                *Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cv-04754-TKW-HTC

_____

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

Appellant Jamaal Ali Bilal spent 20 years civilly committed as a "sexually violent predator" under Florida's Jimmy Ryce Act, Fla. Stat. §§ 394.910–394.932. Upon his release, Bilal, proceeding *pro se*, sued under 42 U.S.C. § 1983, challenging the conditions of his confinement and for malicious prosecution, among other claims. Although he named several defendants, he successfully served only two of them. These defendants moved to dismiss, and the district court dismissed Bilal's § 1983 claims with prejudice.

After careful consideration and with the benefit of oral argument, we agree with the district court's dismissal of Bilal's § 1983 claims. But we disagree with the court's dismissal *with prejudice* of Bilal's claims against defendants who had not been properly served. Because the court lacked personal jurisdiction over the unserved defendants, it lacked the authority to dismiss Bilal's claims against them with prejudice.

We thus affirm the district court's dismissal of Bilal's claims with prejudice against the two served defendants, appellees Dr. John Hodges and the Escambia County Sheriff's Office ("ECSO"). But we vacate the dismissal with prejudice as to the unserved defendants. As to these defendants only, we remand with instructions

that the district court reenter its judgment as a dismissal without prejudice.

## I.    BACKGROUND

In the section that follows, we discuss Bilal's civil confinement in Florida. We then lay out the procedural history of this lawsuit, in which Bilal raised claims challenging the conditions of his confinement and alleging malicious prosecution.

### A. Factual Background

In 1982, Bilal was arrested and charged in Florida state court with rape.[1] His trial resulted in a hung jury. He was tried a second time, and this time the jury found him guilty. But the conviction was later overturned on appeal. To avoid a third trial, Bilal agreed to a plea deal, after which he received a three-year sentence. After completing his sentence, he was released from prison. A few years later, though, he returned to prison after being convicted of battery against a law enforcement official and receiving a 44-month sentence.

---

[1] At the motion to dismiss stage, we accept the well-pleaded allegations in the operative "complaint as true and view them in the light most favorable to" Bilal. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1218 n.2 (11th Cir. 2016). Here, the operative complaint is the first amended complaint, which was docketed in the Northern District of Florida on March 23, 2023. Bilal also purported to file a second amended complaint, but the district court never granted him leave to do so under Federal Rule of Civil Procedure 15(a)(2). So, we treat the first amended complaint as the operative complaint.

Before Bilal completed his second prison sentence, the State of Florida filed a petition in state court to civilly commit him under the Jimmy Ryce Act. The Act authorizes the involuntary commitment of a "sexually violent predator," meaning someone who was previously convicted of a sexually violent offense and "[s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." Fla. Stat. § 394.912(10). Several doctors—including some of the named defendants—played a role in evaluating Bilal for involuntary commitment.

Rather than challenge the petition in court, in May 2001, Bilal "brokered a deal." Doc. 16 at 15.[2] He agreed to be civilly committed in exchange for the state's pledge to "review[] [him] for release" every six months. *Id.* Indeed, the Act requires the state to examine the "mental condition" of a civilly committed person "once every year or more frequently at the court's discretion." Fla. Stat. § 394.918(1). Under Florida law, a report of the examination must then be sent to a court to "conduct a review" and, depending on the circumstances, to hold a "trial" on whether civil commitment is still appropriate. *Id.* § 394.918(1), (3).

For about two decades, Bilal remained civilly committed. But he never received the biannual "release trials" that he says were promised to him or the annual review guaranteed by Florida law.

---

[2] "Doc." numbers refer to the district court's docket entries.

Doc. 16 at 16. Instead, he says that he received "only three civil commitment release trials" to review his status over the duration of his commitment. *Id.*

While Bilal was confined, doctors would evaluate him from time to time to make recommendations about whether he should remain confined. The files about Bilal's clinical condition that the doctors reviewed included, at some point, the convictions of another person, Eddie Lee Banks, who had raped children. According to Bilal, the doctors who evaluated him wrongly relied upon the Banks convictions when assessing whether he should remain committed. In 2007, a Florida state judge directed that the Banks papers "shall not be considered in the review of [Bilal's] commitment status." *In re Commitment of John L. Burton a.k.a. Jamal Ali Bilal*, No. 1999 CA 001507 (Fla. Escambia County Ct. Nov. 21, 2007).[3] According to Bilal, however, Florida officials did not follow the court's order, and the doctors who evaluated him kept relying on the Banks records.

---

[3] Bilal said that "Circuit Court Judge Terry D. Terrell issued a November 15, 2005, court order" that prohibited the use of the "Eddie Lee Banks crimes" in Bilal's file. Doc. 16 at 17. Bilal was probably referring to the November 21, 2007, order by the same judge. Because we are to construe *pro se* complaints liberally, we take judicial notice of the 2007 order. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that *pro se* complaints should be construed liberally); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (noting that when a court rules on a Rule 12(b)(6) motion to dismiss, it "must consider the complaint in its entirety, as well as . . . matters of which a court may take judicial notice").

For the length of his involuntary civil commitment, Bilal usually was housed at the Florida Civil Commitment Center. But when he had to attend court appearances on his continued commitment, he would be moved to the Escambia County Jail. Bilal contends that his detention at a jail amounted to punishment and unlawful seizure.

Bilal was released from civil commitment in May 2019.

## B. Bilal's Lawsuit

In May 2021, Bilal filed a lawsuit in state court against several defendants, bringing a variety of federal and state claims related to his civil commitment. Bilal's claims included a § 1983 claim against the ECSO and others alleging that his Fourteenth Amendment right to due process was violated when he was housed at the Escambia County Jail. He alleged that holding an individual subject to civil commitment in a jail amounted to unconstitutional punishment. He also asserted a § 1983 claim for malicious prosecution against individuals involved in his civil commitment proceedings, including Hodges. He alleged that these individuals relied on the Banks papers at his initial civil commitment proceeding and at every proceeding thereafter, which amounted to malicious prosecution.

23-11703　　　　　　　　Opinion of the Court　　　　　　　　　7

After filing his lawsuit, Bilal successfully served two defendants: ECSO and Hodges.[4] After the case was removed to federal court, these two served defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

A magistrate judge recommended granting the motions to dismiss all of Bilal's federal claims. She also recommended that the district court decline to exercise supplemental jurisdiction over his state law claims.

The two claims at issue in this appeal are the challenge to his conditions of confinement at the Escambia County Jail and the malicious prosecution claim. First, the magistrate judge recommended that the district court dismiss the conditions of confinement claim because Bilal failed to allege plausible facts that would entitle him to relief. She took judicial notice of records from the jail showing that Bilal had been confined there on three separate occasions between October 2017 and May 2019 so that he could attend

---

[4] The other defendants named in Bilal's complaint included other mental health professionals who worked at the facility where he was committed or who evaluated him: Jeffrey Benoit, Ted Shaw, Gregory Pritchard, Karen Parker, Donald Sawyer, Danielle Koskey, and Carole DePass. He also named the following as defendants: the Secretary of the Department of Children and Families ("DCF"), the Sheriff of Santa Rosa County Jail, Kristan Kanner (then-Director of the DCF's Sexually Violent Predators Program), Mike Steele (a United States Navy investigator), Bill Davis Jr. (a deputy with ECSO), Mark Inch (then-Secretary of the Florida Department of Corrections), Ashley Moody (then-Attorney General of Florida), and Thomas Keith (a federal public defender). Bilal never served any of these other defendants.

court proceedings related to his civil commitment.[5] She noted that each detention lasted less than 40 hours and his complaint lacked any allegations that the conditions at the jail "differed in any significant respect from the conditions" at the center where he was usually confined. Doc. 30 at 25. Ultimately, she concluded that these "limited periods of detention, which allowed [Bilal] to attend proceedings related to his civil commitment, [were] of such short duration that they cannot be considered punitive" and thus did not violate the Fourteenth Amendment. *Id.*

Second, the magistrate judge recommended that the district court dismiss Bilal's malicious prosecution claim. She concluded that the claim should be dismissed because it was barred by (1) Florida's statute of limitations for § 1983 claims and (2) the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

As to the statute of limitations, the magistrate judge explained that a four-year limitations period applied. She determined that the limitations period began to run when Bilal became aware that the Banks papers had been placed in his files. She took judicial notice of state court records from Bilal's reassessment hearings, which showed that he had learned about the Banks papers at least by 2007. Based on this date, the magistrate judge concluded that

---

[5] In his complaint, Bilal also asserted challenges to the conditions of confinement when he was detained in other jails. But as the magistrate judge explained, all these periods of confinement occurred before May 2017, which meant that these claims were time barred. On appeal, Bilal says he "do[es] not dispute that decision." Appellant's Br. 30. We therefore do not discuss these claims further.

the four-year statute of limitations for his malicious prosecution claim had expired.

Further, the magistrate judge decided not to apply the continuing violation exception to the statute of limitations. This exception permits a plaintiff to sue on an otherwise time-barred claim when continuing violations of the law occurred within the statutory period. Bilal alleged that officials continually violated the law by relying on the Banks papers at each of his reassessment hearings. But the magistrate judge concluded that no such continuing violations were plausible. She took judicial notice that the Banks papers were not relied upon in Bilal's hearings after 2007. Because he filed his lawsuit after the limitations period had expired and no continuing violations were plausible, the magistrate judge decided that the claim was time barred.

Bilal objected to the magistrate judge's recommendation. He did not object to the magistrate judge's decision to take judicial notice of the state records, nor did he challenge their accuracy. Over Bilal's objections, the district court adopted the magistrate judge's recommendation in full. The court dismissed with prejudice his claims against all defendants, including the unserved ones.

This is Bilal's appeal of the district court's order. We appointed appellate counsel to represent him.

## II.    STANDARDS OF REVIEW

We review *de novo* a district court's order granting a Rule 12(b)(6) motion to dismiss. *United States ex rel. Sedona Partners LLC v. Able Moving & Storage Inc.*, 146 F.4th 1032, 1039 (11th Cir.

2025). To survive dismissal, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the plaintiff "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether Bilal's claims are plausible, we must liberally construe his allegations because he filed his lawsuit as a *pro se* litigant. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When a court rules on a Rule 12(b)(6) motion to dismiss, it "must consider the complaint in its entirety, as well as . . . matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). "We review a district court's decision to take judicial notice of a fact for abuse of discretion." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020).

### III.    DISCUSSION

On appeal, Bilal raises three challenges to the district court's order. First, he argues that the district court erred in dismissing his Fourteenth Amendment due process claim challenging the conditions of his confinement in the Escambia County Jail. He contends that the allegations in his complaint were sufficient to state a claim for relief. Second, he argues that the district court erred in dismissing his malicious prosecution claim, contending that his claim is barred neither by the statute of limitations nor by *Heck*. With

respect to the statute of limitations issue, he maintains that the district court was wrong to rely on judicially noticed state court records to determine when the limitations period accrued. Third, he argues that the district court lacked the authority to dismiss his claims with prejudice as to the unserved defendants. We address each argument in turn.

### A. The District Court Did Not Err in Dismissing Bilal's Conditions of Confinement Due Process Claim.

First, Bilal argues that the district court should not have dismissed his due process claim challenging his conditions of confinement while he was detained in the Escambia County Jail for reassessment hearings regarding his civil commitment. We agree with the district court that he failed to state a claim for relief.

The Due Process Clause of the Fourteenth Amendment promises that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The persons whose liberty the clause protects include those who are civilly committed by a State. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). A person whose "substantive liberty interests" have been violated by a State may bring an action under 42 U.S.C. § 1983. *Id.* at 309, 315. We have held that civilly committed individuals enjoy a substantive liberty interest under the Due Process Clause in "not being housed unnecessarily in jails." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 916 (11th Cir. 2020). This liberty interest applies because, although those "civilly committed under the Jimmy Ryce Act have previously been convicted of crimes, they

12                    Opinion of the Court                    23-11703

have served their time" and are no longer prisoners. *Id.* at 917. They must therefore not be "subjected to conditions of confinement" in jail that are "substantially worse than they would face upon commitment." *Id.* (citation modified).

Here, Bilal argues that being housed in a jail to attend civil commitment reassessment hearings "amounts to punishment and unlawful seizure." Doc. 16 at 14. In particular, he alleges that he was "detained at the Escambia County Jail, Pensacola, Florida, for Ryce related court appearances." *Id.* at 21. But he does not allege any facts about the conditions of his confinement. The complaint contains no allegations that the conditions at the jail were any worse than the conditions at his civil commitment center. Bilal's stays at the jail were also brief. The magistrate judge took judicial notice of jail records showing the exact dates when he entered and exited the jail; these records indicate that he spent less than 40 hours in jail on each occasion.[6]

To argue that his jail stays were unlawful, Bilal points to his previous conditions of confinement case. Years ago, he was confined at the Santa Rosa County Jail for a reassessment hearing. *Geo Care, LLC*, 981 F.3d at 908. He raised the same due process claim as here, and we ruled that he had stated a plausible claim for relief

---

[6] In his objection to the magistrate judge's recommendation, Bilal did not challenge the magistrate judge's taking judicial notice about the dates of his jail stays. On appeal, he provides these same dates.

because of the "punishing conditions" that he alleged being subjected to at the jail. *Id.* at 909, 917.

In his previous case, however, Bilal provided much more detail about the conditions he faced. He alleged that he "was placed into the jail's confinement unit" and lacked "access to TV, phone calls, law library, visitation, fresh air exercise, canteen privileges, or access to religious and/or group." *Id.* at 917 (citation modified). He "did not receive any mental-health treatment." *Id.* The guards were "abusive," using "show of force tactics" that led him "to become suicidal and spend more than two weeks in a suicide cell." *Id.* And he was housed in the jail for one month, even though he was attending a one-day hearing. *Id.*

In this case, no similarly punishing conditions have been alleged. And his stays at the Escambia County Jail were brief. Thus, he has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The district court properly dismissed Bilal's claim.

## B. The District Court Did Not Err in Dismissing Bilal's Malicious Prosecution Claim.

Next, we address Bilal's argument that the district court wrongly dismissed his § 1983 malicious prosecution claim. Malicious prosecution is a tort that can "redress a wide array of baseless legal proceedings, civil and criminal alike, that could injure a person or her property." *Gervin v. Florence*, 139 F.4th 1236, 1254 (11th Cir. 2025). Bilal's malicious prosecution claim alleged that individuals involved in his civil commitment proceedings relied in part on

the convictions of another person, Banks. Information on these convictions were wrongly placed in Bilal's clinical file.

The district court dismissed Bilal's malicious prosecution claim as barred by Florida's statute of limitations for § 1983 claims and by *Heck*. We agree that Bilal's claim is barred by the statute of limitations.[7] "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (citation modified).

For § 1983 claims, the forum state's statute of limitations applies. *Doe ex rel. Doe #6 v. Swearingen*, 51 F.4th 1295, 1302–03 (11th Cir. 2022). Here, as the parties agree, Florida is the forum state. Florida subjects § 1983 claims to a four-year statute of limitations. *Id.* at 1303 (citing Fla. Stat. § 95.11(3)).

Although Florida law establishes a four-year statute of limitations, we look to federal law to determine when the limitations period accrues for a § 1983 claim. *See id.* Generally, accrual for a § 1983 claim—when the clock starts to run—occurs when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id.* (citation modified).

Applying Florida's four-year statute of limitations for § 1983 claims and the federal accrual rule, the magistrate judge concluded

---

[7] Because we conclude that Bilal's claim is barred by the statute of limitations, we need not address whether the *Heck* bar also applies.

that the limitations period for Bilal's malicious prosecution claim had elapsed. She observed that, as early as 2007, Bilal knew that Banks's rape convictions had been wrongly placed in his file.[8] Her observation was informed by taking judicial notice of state court records from Bilal's 2007 reassessment hearing. At this hearing, a state court judge ordered Florida officials not to consider the Banks papers in any reviews of Bilal's commitment status. This court order sufficiently put Bilal on notice of the facts that would support his malicious prosecution claim.

Bilal argues that the district court erred in (1) applying the general federal accrual rule to treat his claim as time-barred and (2) taking judicial notice of state court records. We reject both arguments.

First, Bilal argues that the district court should not have applied the general accrual rule because his claim falls under the continuing violation exception. This exception "permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Ctr. for Biological*

---

[8] Bilal may have been aware of the misplaced Banks papers even earlier than the magistrate judge determined. In 2000, he filed a petition for habeas relief in which in which he alleged that "[d]uring Ryce assessment proceedings conducted by Dr Benoit and Dr. Robinson it was learned that another person's sex crimes (Eddie Banks) were intertwined with my criminal record to make it look as if those crimes of this other person . . . were mine." Petition under 28 USC § 2254 for Writ of Habeas Corpus By a Person in State Custody at 6–7, *Bilal v. Dep't of Child. & Fam. Servs.* (N.D. Fla. March 20, 2000) (No. 3:00-cv-101).

16                   Opinion of the Court                   23-11703

*Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006). Bilal says that the exception applies because various defendants repeatedly violated the 2007 state court order. He alleges that, at each subsequent reassessment hearing, they "relied upon" the Banks papers "as a basis" to recommend that he remain involuntarily committed. Doc. 16 at 18.

As the magistrate judge concluded, though, Bilal has not pleaded sufficient facts to plausibly show that anyone relied on the Banks papers at subsequent hearings. After taking judicial notice of the state court records from Bilal's post-2007 reassessment hearings, she observed that the Banks papers were never relied upon at these hearings.

Further, the continuing violation exception is limited "to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." *Hamilton*, 453 F.3d at 1335. "If an event or series of events should have alerted a reasonable person to act or assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." *Id.* (citation modified). Here, Bilal knew about the presence of the Banks papers in his file in 2007. He could have asserted his malicious prosecution claim after gaining this knowledge. Because he did not, he cannot now, more than a decade later, take advantage of the continuing violation exception.

Second, Bilal argues that the district court abused its discretion in taking judicial notice of the state court records. When a court rules on a Rule 12(b)(6) motion to dismiss, it "must consider

the complaint in its entirety, as well as . . . matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322. The Federal Rules of Evidence establish the conditions for when and how a court may take notice. A "court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). When a court takes such notice, "the party, on request, is . . . entitled to be heard." *Id.* 201(e).

After the magistrate judge issued her recommendation, Bilal filed his objections. But, in his objections, he did not dispute the facts that were judicially noticed under Rule 201(b)(2). He also did not request a hearing under Rule 201(e). Even now, on appeal, he does not argue that the accuracy of the state court records can reasonably be questioned under Rule 201(b)(2).

Instead, Bilal argues that the district court abused its discretion by failing to attach the judicially noticed records. He is correct that we previously advised courts to "include copies of any judicially noticed records as part of the Order that relies upon them." *Paez*, 947 F.3d at 653. But we described this advice as a "best practice" rather than a legal requirement. *Id.* And we established this best practice specifically for "inmates" who "may not have ready access to their legal papers" or "to an Internet connection." *Id.* at 652–53. Given that Bilal has already been released from civil commitment, the district court was not obligated to follow the best practice of attaching judicially noticed state court records.

Because the continuing violation doctrine does not apply here and Bilal has failed to establish that the district court abused its discretion in taking judicial notice, the district court did not err in concluding that the statute of limitations period for Bilal's malicious prosecution claim expired long before he brought his claim. Therefore, his malicious prosecution claim is time barred.

### C. The District Court Erred in Dismissing With Prejudice Bilal's Claims Against the Unserved Defendants.

Bilal's third argument is that the district court lacked the authority to dismiss with prejudice his claims against the unserved defendants. We agree with him because the court lacked personal jurisdiction over these defendants.

To support its dismissal with prejudice of Bilal's claims against the unserved defendants, the district court invoked its "inherent authority" to dismiss "frivolous" claims. Doc. 33 at 3. True, a district court has inherent power to dismiss a lawsuit "so patently lacking in merit as to be frivolous." *Jefferson Fourteenth Assocs. v. Wometco de P.R., Inc.*, 695 F.2d 524, 526 n.3 (11th Cir. 1983). Indeed, in one of Bilal's previous lawsuits, we explained on appeal that a "claim is frivolous if it is without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

Yet even frivolous claims generally cannot be dismissed with prejudice against unserved defendants. That is because "[s]ervice of process is a jurisdictional requirement." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). Thus, "a court lacks jurisdiction over the person of a defendant when that defendant has not

been served." *Id*. When a court lacks jurisdiction, it cannot pass judgment on the merits. A "dismissal of a complaint with prejudice" counts as "final judgment on the merits." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990).

A defendant may waive an objection to the exercise of jurisdiction based on lack of service of process. Federal Rule of Civil Procedure 12(h) directs that this defense is waived when a party fails to raise it in a motion to dismiss filed under Rule 12 or include it in a responsive pleading. Consistent with Rule 12, we have recognized that "[o]bjections to service of process . . . like any other objection to jurisdiction over the person, can be waived by the party over whom jurisdiction is sought." *Pardazi*, 896 F.2d at 1317. Here, though, there was no such waiver by the unserved defendants. Indeed, these defendants did not even file appearances in the case, much less responsive pleadings or Rule 12 motions.

The district court thus lacked the authority to dismiss Bilal's claims with prejudice against defendants whom he sued but did not properly serve. Absent jurisdiction, a court cannot dismiss claims—even frivolous claims—with prejudice. Previously, we have vacated and remanded district court orders that dismissed with prejudice claims against unserved defendants. *See, e.g.*, *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1341–43 (11th Cir. 2005). We do so here.

## IV.    CONCLUSION

For the above reasons, we AFFIRM the district court's dismissal with prejudice as to the served defendants, ECSO and

Hodges. We VACATE the dismissal with prejudice as to the unserved defendants. As to these unserved defendants only, we REMAND to the district court with instructions to reenter judgment dismissing without prejudice.[9]

**AFFIRMED in part, VACATED and REMANDED in part WITH INSTRUCTIONS.**

---

[9] ECSO filed a motion asking us to take judicial notice of more than 600 pages of documents. We carried the motion with the case. As we now rule favorably for ECSO, the motion is denied as moot.